[Civil No. 2393.   Filed September 29, 1925.]

[239 Pac. 506.]

# AMALIA HUNING CONKLING, HENRY HUNING AND MARIA HUNING, Petitioners, v. J. E. CROSBY, as Judge of the Superior Court of Navajo County, State of Arizona, and THE BANK OF WINSLOW, a Corporation, Respondents.

1. Courts—Supreme Court has Jurisdiction to Issue Writ to Stay Proceedings in Cause of Which It has Appellate Jurisdiction, on Application of Parties Interested in Subject Matter, Though Strangers to Proceeding.—Under Constitution, article 6, section 4, and Civil Code of 1913, paragraph 328, Supreme Court has jurisdiction to issue writ of prohibition against further action by judge of superior court in cause of which Supreme Court has appellate jurisdiction, on application of persons beneficially interested in subject matter, on ground of judge's disqualification by bias, though they are strangers to proceeding.

2. Prohibition—Writ Available to Challenge Judge's Qualification as Well as Court's Jurisdiction.—That superior court has jurisdiction of parties and subject matter of action does not affect jurisdiction of Supreme Court to issue writ of prohibition against further action therein on ground of trial judge's disqualification; prohibition being available to challenge judge's qualification as well as court's jurisdiction, though petitioners failed to raise question in manner prescribed by Civil Code of 1913, paragraph 500.

3. Judges—Statute as to Disqualification of Judge for Bias Held Merely Declaratory of Common-law Rule.—Civil Code of 1913, paragraph 500, merely declares common-law rule that no judge, supposed to be partial from interest or other cause, should act, irrespective of time of filing application and supporting affidavit, and hence rule of decision is that of common law, as required by paragraph 5555.

4. Prohibition—Acts of Judge Disqualified by Partiality may be Subject of Direct Attack by Application for Writ of Prohibition.—Acts of judge, disqualified by partiality to party,

---

1. See 22 R. C. L. 7.
2. Prohibition to prevent prejudiced judge from proceeding with case, see note in 8 A. L. R. 1238.

are not void, but only voidable, at common law, and, while they may not be questioned in collateral proceeding, they may be subject of direct attack in due season as by petition for writ of prohibition against further action in cause.

5. JUDGES—DISQUALIFICATION FOR PARTIALITY MAY BE RAISED AT ANY TIME BY INTERESTED PERSON WITHOUT FILING AFFIDAVIT.—Right of judge, disqualified by partiality, to proceed further in case may be challenged at any time by any interested person, not estopped from raising question, without filing affidavit under Civil Code of 1913, paragraph 500, subdivision 4, which operates as peremptory challenge to judge, though no disqualifying facts are stated therein.

6. PROHIBITION—WRIT MAY BE GRANTED FOR JUDGE'S DISQUALIFICATION BY PARTIALITY WITHOUT REQUEST TO WITHDRAW VOLUNTARILY OR PLEA TO JURISDICTION.—While Supreme Court will always scrutinize whole situation carefully on application for extraordinary writ of prohibition on ground of trial judge's disqualification by partiality, and refuse to grant it in absence of preliminary request by applicant to judge to withdraw voluntarily or plea to jurisdiction, such objection in lower court is not jurisdictional.

7. PROHIBITION—PARTIES NOT BEFORE COURT, AND FEARING RENDITION OF JUDGMENT BEFORE RESORT TO SUPREME COURT, HELD ENTITLED TO WRIT AGAINST FURTHER ACTION ON GROUND OF JUDGE'S BIAS, THOUGH NOT OBJECTING TO JURISDICTION IN LOWER COURT.— Heirs at law not before the court in action against executor, and fearing that application or suggestion by them to trial judge would be disregarded and cause judgment to be rendered before resort could be had to Supreme Court, *held* entitled to writ of prohibition against further action on ground of judge's disqualification by partiality, though no objection to jurisdiction was made in lower court.

8. JUDGES—DISQUALIFICATION BY BIAS MAY BE WAIVED BY FAILURE TO OBJECT BEFORE ISSUE JOINED.—At common law, judge's disqualification by bias in favor of suitor may be waived by failure to object before issue joined, if facts are known to party recusing.

9. JUDGES—COMMON KNOWLEDGE IN COUNTY OF JUDGE'S INDEBTEDNESS TO PLAINTIFF NOT ATTRIBUTABLE TO NONRESIDENTS FAILING TO CHALLENGE QUALIFICATION.—Common knowledge in county of venue that trial judge was indebted to plaintiff cannot be attributed to nonresidents of such county, so as to render their failure to object in lower court a waiver of disqualification.

---

6. See 22 R. C. L. 27.

10. JUDGES—BURDEN ON PARTY CLAIMING WAIVER OF DISQUALIFICA-
     TION TO PROVE FACTS RELIED ON.—Burden is on party claiming
     waiver of judge's disqualification to prove facts on which he
     relies.

11. JUDGES—GROUND RECOGNIZED BY LAW MUST EXIST TO DISQUALIFY
     JUDGE, WHERE NO AFFIDAVIT IS FILED.—Any substantial ground,
     recognized by common law or statute, as sufficient to disqualify
     trial judge, is sufficient to form basis of belief of affiant, under
     Civil Code of 1913, paragraph 500, subdivision 4, that he cannot
     have fair and impartial trial, and thus operate as peremptory
     challenge to judge, if honestly believed in by affiant, but before
     judge can be disqualified without regard to whether affidavit is
     filed, ground recognized by law must actually exist.

12. JUDGES—INDEBTEDNESS TO PARTY NOT DISQUALIFICATION UNLESS
     IT AFFECTED INTEREST IN OUTCOME OF LITIGATION.—At common
     law, no disqualification of judge arose merely from fact that
     he was indebted to one of parties, or *vice versa*, unless such
     indebtedness affected interest of judge in outcome of litigation.

13. JUDGES—"INTEREST" WHICH DISQUALIFIES JUDGE DEFINED.—In-
     terest which disqualifies judge is direct pecuniary or property
     interest, or one involving some individual right or privilege in
     subject matter of litigation, where liability or pecuniary gain
     must occur in event of suit.

14. JUDGES—JUDGE'S INDEBTEDNESS TO PARTY NOT MADE DISQUALIFI-
     CATION PER SE BY STATUTE.—Civil Code of 1913, paragraph 500,
     subdivision 4, making bias and prejudice, disassociated from in-
     terest in subject matter of litigation, a disqualification of judge,
     does not make his indebtedness to party a disqualification *per se*.

15. JUDGES—PARTY ALLEGING BIAS AND PREJUDICE MUST PROVE SUCH
     ACTUAL BIAS, HOSTILITY, OR ILL WILL AS WOULD PREVENT IM-
     PARTIAL JUSTICE. — Party challenging judge's qualification on
     ground of bias and prejudice must go further than to prove
     facts, which in his or any other's opinion show bias and prejudice,
     and prove such actual bias, hostility, or ill will as would prevent
     impartial justice being done.

16. CONSTITUTIONAL LAW—JUDGES—JUDGE MUST DETERMINE FOR HIM-
     SELF BIAS OR PREJUDICE ARISING FROM INDEBTEDNESS TO PARTY;
     ANY CHANGE IN EXISTING LAW FOR LEGISLATURE NOT COURT.—
     The question of a judge's bias or prejudice because of indebted-
     ness to one party is matter for his own determination, and in
     determining application for prohibition to restrain him from
     further action, the Supreme Court must be guided by the law

10.   See 27 R. C. L. 910.
13.   See 15 R. C. L. 528.
15.   See 15 R. C. L. 530.

as it exists, not by individual views of justices as to policy or propriety; any change in the law being a matter for the legislature, not the court.

See (1) 15 C. J., p. 1027; 32 Cyc., p. 622. (2) 32 Cyc., p. 607. (3) 33 C. J., p. 1022. (4) 33 C. J., pp. 1022, 1023; 32 Cyc., p. 607. (5) 33 C. J., p. 1014. (6) 32 Cyc., pp. 624, 629. (7) 32 Cyc., p. 624. (8) 33 C. J., p. 1020. (9) 33 C. J., p. 1020. (10) 33 C. J., p. 1019. (11) 33 C. J., p. 1000. (12) 33 C. J., p. 992. (13) 33 C. J., pp. 992, 993, 994. (14) 33 C. J., p. 999. (15) 33 C. J., pp. 1000, 1017. (16) 12 C. J., p. 887; 33 C. J., p. 1017.

Original proceeding for Writ of Prohibition. Peremptory writ granted. On hearing to determine whether writ should be made absolute, writ quashed.

Messrs. Armstrong, Lewis & Kramer, for Petitioners.

Messrs. Kibbey, Bennett, Gust, Smith & Lyman, for Respondent J. E. Crosby.

JENCKES, Superior Judge.—A peremptory writ of prohibition was issued out of this court upon application of petitioners to the respondent J. E. Crosby, as judge of the superior court of Navajo county, requiring him to refrain, until the further order of this court, from taking any further action in the determination of that certain cause in the said superior court entitled Bank of Winslow, plaintiff, v. Union Bank & Trust Company, a Corporation, as executor of the estate of Henry Huning, deceased, the Union Bank & Trust Company, trustee, and George Hubbard, defendants, and to show cause upon a day therein stated why such writ should not be made permanent. The respondent Crosby duly filed his return to the writ, and, first, moved that the writ be quashed upon the ground that the same was issued without jurisdiction; second, demurred upon the ground that the petition upon which the writ was issued "failed to state any ground for the issuance of said writ and for

the remedy therein prayed for, and upon the ground that said petition fails to state facts sufficient to constitute any ground for relief or cause of action against this respondent''; and third, made answer to the allegations of fact set forth in the petition as the basis for the writ, which said allegations of fact, stated briefly, are that the said respondent was, prior to the filing and during the pendency before him of the cause in question, indebted to the plaintiff in said cause, the Bank of Winslow, in a large sum of money, and was therefore disqualified to sit in judgment in said cause by reason of his bias and prejudice in said plaintiffs' favor due to such indebtedness. The answer of respondent admits his indebtedness to the said Bank of Winslow in the sum of $5,000 or $6,000 as alleged by petitioners, but alleges:

"That he was not conscious of any actual prejudice or bias for or against the party plaintiff or any of the parties defendant in said cause; that such disqualification was never suggested to him by any party to said action formally or informally, by affidavit or otherwise."

The cause in question had been tried before respondent without a jury, and judgment only remained to be rendered when the writ of prohibition herein was issued.

As to the jurisdiction of this court to issue the writ, it is only necessary to notice that the cause in which the respondent is by the writ prohibited from taking further actions is one over which this court has appellate jurisdiction, in order to determine that we have jurisdiction in this proceeding, provided the further condition hereinafter noted is found to exist. Const.; Ariz. art. 6, § 4; Rev. Stat. (Civ. Code) 1913, par. 328; *Tyler* v. *District Court,* 14 Ariz. 6, 123 Pac. 315; *State ex rel.* v. *Sapp,* 15 Ariz. 24, 135 Pac. 718; *Powers* v. *Superior Court,* 15 Ariz. 275, 138 Pac. 21.

That the further condition imposed by the Constitution does exist, viz., that the issuance of the writ in this instance is necessary and proper for the complete exercise of such appellate jurisdiction, can hardly be questioned. Petitioners here, although beneficially interested in the subject matter of the cause in question, as heirs at law of Henry Huning, deceased, are nevertheless strangers to that proceeding. They have no appeal from any judgment or order which may be made in the case; nor any means of procuring an appeal to be taken, or of bringing to the attention of this court upon appeal the question of the disqualification of the trial judge, nor have they any other remedy provided by law. It is matter of great public concern that the courts keep within their prescribed jurisdiction, and that the judiciary do not preside therein, when for any reason they are in anywise disqualified therefor. A means ought always to be provided for the determination of the question of the jurisdiction of the court or the qualification of the judge to preside in any case where either is challenged, even though, as here, the challenge is interposed by those who are strangers to the proceedings. That they are strangers gives this court the right to grant or refuse the writ, in its discretion, but has no bearing on the question of jurisdiction. 22 R. C. L. 7; *Van Dyke* v. *Superior Court,* 24 Ariz. 508, 211 Pac. 576. We have no hesitation, therefore, in holding that, if the facts presented here warrant it, the issuance of the writ is necessary and proper for the complete exercise of the appellate jurisdiction of this court.

Respondent, however, questions the jurisdiction of this court to issue the writ upon another ground, which, briefly stated, is that, because the statutes of this state (par. 500, Rev. Stat. Ariz. 1913, Civil Code), prescribe the method and manner of disqualifying the trial judge, the petitioners, having wholly failed to

bring themselves within the provisions of the statute by which the right of the judge to sit might be challenged, have left the court with jurisdiction of the case; that as the trial court had jurisdiction over the case at the time the petition herein was filed, therefore this court was without jurisdiction to issue the writ. It is to be noted here that it is not the jurisdiction of the court that is challenged but the right and propriety of the judge to preside over the trial of the case. Prohibition is available to challenge the qualification of the judge as well as the jurisdiction of the court. *State ex rel. McAllister* v. *Slate,* 278 Mo. 570, 8 A. L. R. 1226, 214 S. W. 85, and annotation at page 1236. The fact that the court may have jurisdiction over the parties and subject matter of the action can have no bearing upon the question presented here of the qualification of respondent to preside in the case. The provisions of paragraph 500, Revised Statutes of Arizona of 1913, Civil Code, are as follows:

"If either party to a civil action brought in any superior court shall file an affidavit alleging either:

"(1) That the judge of said court has been engaged as counsel in the case prior to his appointment or election as judge, or is otherwise interested in the case.

"(2) That said judge is of kin or related to either party.

"(3) That the said judge is a material witness in the case.

"(4) That the affiant has cause to believe and does believe that on account of the bias or prejudice or interest of said judge he cannot obtain a fair and impartial trial.

"It shall be the duty of said judge to at once request the judge of the superior court of some other county to hold the superior court in the county where such action is pending, and to preside at the trial of such action, and to hear all the matters involved therein."

In *Allan* v. *Allan*, 21 Ariz. 70, 185 Pac. 539, we held that the foregoing provisions of statute were but declaratory of the common-law rule that no judge ought to act where from interest or any other cause he is supposed to be partial, and that consequently the rule of decision in this respect is that of the common law, as required by paragraph 5555, Revised Statutes of Arizona of 1913, Civil Code. Quoting from the opinion in that case delivered by Chief Justice Cunningham:

"An impartial, fair-minded judge is aware of his qualifications to try a cause coming on before the trial begins. If he is disqualified by reason of bias and prejudice arising from his relationship to the parties from his having been counsel in the case before he became judge, or because he is a witness in the case, no reason ought to prompt him to act as judge. The parties and the public alike do not sanction his action in such circumstances because the existence of either relation imports bias and prejudice. In such event (which we sincerely trust will never arise in this state), the judge is presumed to be disqualified as a fact, and if he acts thereafter, his acts are the acts of a disqualified person, having been so disqualified before the trial commenced as a fact, without regard to the time of filing the application and affidavit supporting it, setting forth the relation from which bias and prejudice is conclusively presumed in such case."

We adhere to the statement of the law as heretofore enunciated in the Allan case. It may be noted here, however, that, "while it is well settled by the common law that no judge ought to act where, from interest or from any other cause, he is supposed to be partial to one of the suitors, yet his action in such a case is regarded as an error or irregularity not affecting his jurisdiction, and to be corrected by a vacation or reversal of his judgment, except in the case of those inferior tribunals from which no appeal or writ of error lies." 1 Freeman on Judgments, 5th ed., 657, par. 329. In other words, the acts of a judge

laboring under such disqualification are, by the rule of the common law, not void, but voidable only. It is therefore clear that, while they may not be questioned in a collateral proceeding, they may be the subject of a direct attack, if made in due season, such as petitioners have instituted here.

If indebtedness of a presiding judge to one of the parties to a proceeding before him be a disqualifying circumstance, then it appears from the petition and answer herein that the respondent was disqualified to act before the commencement of the cause in question, and that such disqualification continued throughout the pendency of the case before him. Nothing was necessary by way of affidavit of any of the parties or of the petitioners here to effect or complete it. The petitioners' affidavits presented to this court added nothing to it, and did but serve to bring to our attention the facts upon which they alleged the disqualification to exist. When a party to a civil action proceeds under paragraph 500 of the Civil Code, it is the affidavit itself which disqualifies the judge, and not the actual existence of any circumstances which would in fact disqualify him. He may or may not be disqualified as a fact—whether he is or is not is entirely immaterial so far as paragraph 500 of the Civil Code is concerned. It is not even necessary to state any disqualifying facts if the affidavit be filed under subdivision 4 thereof. If it is seasonably filed the judge may no longer sit in the case, the affidavit operating as a peremptory challenge to the judge. *Allan* v. *Allan, supra; Jenkins* v. *Skelton,* 21 Ariz. 663, 192 Pac. 249; *Stephens* v. *Stephens,* 17 Ariz. 306, 152 Pac. 164; *Smith* v. *King of Ariz. Min. Co.,* 9 Ariz. 228, 80 Pac. 357.

But if the judge is actually laboring under a disqualification, his right to preside further in the case may be challenged at any time by any interested person who is not estopped from raising the question.

And as no affidavit is necessary to the consummation of a disqualification which already exists, neither can the failure to file the affidavit in any manner cure an existing disqualification or clothe the judge with authority to preside notwithstanding.

Again respondent urges ,that, before application may be made for the writ of prohibition, the attention of the court or judge whose jurisdiction or qualification is questioned should be called to the alleged disability, and that failure so to do deprives the higher court of jurisdiction to entertain the application, and that, petitioners having failed so to do in the present case, this court is without jurisdiction to issue the writ. As stated in 22 Ruling Case Law, 27, 28, paragraph 27, such is the general rule; the respect and consideration due to the lower court and the expediency of preventing unnecessary litigation being the foundation of the rule. But, as we read further from the same paragraph:

"The objection in the lower court cannot be said to be jurisdictional, and the higher court can and will proceed without such objection in proper cases. The rule is one of discretion only and is not in any sense rigid or arbitrary. Thus no objection in the court sought to be prohibited need be made where the proceeding is *ex parte*, and there was no opportunity to object; where the applicant was prevented by artifice or fraud from making objection; where the lack of jurisdiction is apparent on the face of the proceedings; where the intention of the inferior court to act beyond its jurisdiction is made apparent in any way and it is obvious from the whole proceedings that such an application would be futile; or where the necessary delay would be highly injurious to the interests of the applicant. The matter of judicial courtesy should yield to substantial personal rights of litigants"—citing authorities.

Ordinarily, when any fact of disqualification is known to the litigants, but nevertheless the judge is proceeding to the trial or hearing of the cause without

perhaps for the moment having in mind the fact or circumstance upon which the disqualification is based, common courtesy alone would suggest that the matter first be called to his attention that he may have the opportunity of withdrawing voluntarily. This court will always scrutinize carefully the whole situation when application is made for this extraordinary writ, and in every case will refuse to grant it in the absence of a preliminary request made by the applicant to the lower court to withdraw voluntarily, or of a plea to the jurisdiction, unless the applicant is able to show circumstances bringing himself within some exception to the general rule. The courtesy which counsel and litigants owe to the judiciary and the respect and consideration due to the courts of the state would prevent our doing otherwise. But here the petitioners have brought themselves within at least two of the exceptions noted above: First, so far as these petitioners are concerned, the proceedings in the lower court were as to them wholly *ex parte.* They were not before the court in any manner, and therefore had no opportunity of objecting, and were not in a position to make any requests or suggestions whatever to the court or to the judge. And second, it appears that the case was about to go to judgment, and petitioners feared that any application or suggestion on their part to the respondent would be disregarded by him and cause judgment to be rendered before resort could be had to this court. That their fears were not entirely groundless appears from the attitude taken by respondent in endeavoring to retain jurisdiction of the case. In any event it seems to be the rule in some jurisdictions that where a judge as respondent to the writ appears in response to the rule to show cause and affirms the right of himself or of his court to proceed with the matter in hand, it then becomes unnecessary to show that objection to the jurisdiction was taken in such inferior court. *State*

v. *Williams,* 221 Mo. 227, 120 S. W. 740. In *State* v.
*Bright,* 224 Mo. 514, 135 Am. St. Rep. 552, 20 Ann.
Cas. 955, 123 S. W. 1057, the court said:

"One of the points made is that the relators' peti-
tion here fails to aver, and therefore the admitted
facts fail to show, that relators, then respondents,
in the circuit court of Jasper county made objection
to the jurisdiction of that court prior to the applica-
tion for a writ of prohibition here. It has never been
a hard and fast rule in this state that the jurisdiction
of the lower court must first be challenged therein be-
fore a provisional writ can issue from this court. . . .
Neither do counsel for respondents in this case make
any suggestion that the court in Jasper county would
not have held on with a death grip to jurisdiction of
the cause pending before that court. On the con-
trary, the judge of that court joins in the return made
by the city marshal, affirming his right to proceed
with the case. Thus by the return it is shown that a
challenge to the jurisdiction would have been un-
availing."

The motion of respondent to quash the writ upon
the ground of want of jurisdiction in this court is
accordingly denied.

Respondent further urges that, as the fact of his
indebtedness to the plaintiff bank was a matter of
common knowledge throughout Navajo county, peti-
tioners must have been cognizant of it long before
filing their petition, and ought therefore to be held to
have waived any right to object which they may
otherwise have had. No doubt the rule of the com-
mon law is that the disqualification may be waived.

"If the facts are known to the party recusing, he is
bound to make his objection before issue joined and
before the trial is commenced, otherwise he will be
deemed to have waived the objections, in cases where
the statute does not make the proceedings void. Ex-
cept in cases where a statute forbids it, the parties by
a joint application to the judge, suggesting the
ground of recusation, expressly waiving all objections

on that account, and requesting him to proceed with the trial or hearing, signed by them or their attorneys, may give the judge full power to proceed as if no objection existed. This is denominated in civil and Scotch law prorogated jurisdiction; and a tacit prorogation is inferred against a plaintiff who brings his cause before a judge who is known to him to be disqualified to try it; and against a defendant, who, knowing the existence of just ground of recusation, appears and without objecting offers defenses in the cause, either dilatory or peremptory." 1 Freeman on Judgments (5th ed.) 658, par. 329, quoting from the case of *Moses* v. *Julian,* 45 N. H. 52, 84 Am. Dec. 114, hereinafter cited.

But it nowhere appears in the record before us, either by affidavit or otherwise, that petitioners knew anything about such indebtedness until immediately preceding the filing of their petition. Neither they nor counsel representing them here are residents of Navajo county, and therefore any common knowledge prevailing in that county could not be attributable to them. "In accordance with the general rule as to the burden of proof it devolves upon the party claiming a waiver to prove the facts upon which he relies for such waiver." 27 R. C. L. 910, par. 6. No such proof being offered and no facts establishing waiver appearing to the court, we find that petitioners have not waived the right to make this application.

This brings us to the merits of the controversy—to the question of whether or not the indebtedness of the judge to one of the parties to a proceeding before him will as a matter of law disqualify him from presiding therein.

It cannot be doubted that, if a party to a civil action honestly believed that an existing indebtedness of the judge about to try his case created a condition of bias or prejudice against him, and that he therefore could not obtain a fair and impartial trial, such party would

be justified in making the disqualifying affidavit permitted by subdivision 4 of paragraph 500 of the Civil Code. In fact, any substantial ground, whether or not it is recognized by common law or by statute as a sufficient ground of disqualification, if honestly believed in by the affiant, would be sufficient to form the basis of his belief that he could not have a fair and impartial trial, and thus operate, as already pointed out, as a peremptory challenge to the judge. But before the judge can be disqualified as a fact, without regard to whether or not an affidavit be filed to disqualify him, there must actually exist some one of the grounds recognized by law. It is therefore evident that before we can say as matter of law that respondent was disqualified in the case in question because of his indebtedness to the plaintiff therein, we must go further than to say that he might be disqualified because of such indebtedness by the filing of an affidavit under subdivision 4, if filed in due season, and find that such indebtedness falls within the category of disqualifying grounds recognized by the law of this state. Such grounds are those recognized by the common law and prescribed by statute, paragraph 500 of the Civil Code.

A case which discusses very fully the common-law disqualifications of judges, and which forms the basis for many of the statements of the law on the subject found in the various encyclopedias and text-books, is the early case of *Moses* v. *Julian,* decided by the Supreme Judicial Court of New Hampshire in the year 1863, and reported in 45 N. H. 52, 84 Am. Dec. 114. We quote in part from the opinion delivered by Chief Justice BELL in that case:

"The most perfect integrity that can be in judges is no hindrance why the parties, who have causes depending before them, may not challenge them, or except against them, and why they ought not, of their own accord, to abstain from hearing causes in which

they may have some interest, or where there may be some just ground for suspecting them, and they themselves are obliged to declare the causes which may render them suspected, if the parties are ignorant of them; for although a judge may be above the weakness of suffering himself to be biased or corrupted, and may have resolution enough to render justice against his own relations, and in the other cases where it may be lawful for the parties to except against the judges, yet they ought to mistrust themselves, and not draw upon themselves the just reproach of a rash proceeding, which would be in effect a real misdemeanor. . . .

"The judge, who is satisfied that he is legally disqualified to act in a case, ought not to wait until the parties object to him, but should refuse to hear the cause, by an entry in the docket that he does not sit in the case. . . .

"A judge ought not to withdraw upon a mere suggestion, unless the cause of recusation is true in fact and *sufficient in law;* because the office of judge is one necessary for the administration of justice, and from which a judge *should not be permitted to withdraw without sufficient grounds.*" (Italics ours.)

Then the learned Chief Justice sets forth the various grounds of disqualification recognized at common law *inter alia:*

"The friendly or hostile relations existing between a judge and one of the parties may be good ground of recusation. . . . Of the first class, there are various circumstances referred to as examples indicating a state of feeling inconsistent with impartiality, as where the judge has received himself, or his near relative, important benefits or donations from one of the parties; . . . where the relation of master and servant exists between the judge and a party; . . . or where the relation of protection and subjection exists between the judge and a party, as in the case of a guardian and ward. . . .

"But a creditor, lessee, or debtor, may be judge in the case of his debtor, landlord, or creditor, except

in cases where the amount of the party's property involved in the suit is so great that his ability to meet his engagements with the judge may depend upon the success of his suit.''

While it is perhaps true, as stated in 33 Corpus Juris, 998, paragraph 150, that so far as the foregoing opinion purports to state the common-law rule concerning the disqualification of judges because of bias and prejudice, it is *dictum* only; nevertheless it is no doubt true that, whether or not bias and prejudice was a ground of disqualification at common law, no disqualification arose merely from the fact of the existence of an indebtedness of the judge to one of the parties, or *vice versa,* unless such indebtedness in some manner effected an interest on the part of the judge in the outcome of the litigation. The further statement in paragraph 150 of Corpus Juris, *supra,* that, ''It is generally held in the absence of statutory provision, that bias or prejudice on the part of a judge, which is not based on interest, does not disqualify him,'' indicates the common-law rule. In *State* v. *Superior Court of Pima County,* 14 Ariz. 126, 125 Pac. 707, we recognized such to be the rule of law.

It is apparent from the foregoing that in the development of the common law the courts were zealous to safeguard the rights and interests of litigants from the dangers attending trial of issues by judges who were in the slightest manner interested in the outcome thereof. But it is also equally apparent that the common law cannot afford any support for the contention of petitioners that the mere indebtedness of the judge to one of the parties to litigation is a ground for disqualification, and particularly so in the absence of any facts upon the record before us indicating even remotely that the obligation of the respondent to pay his indebtedness to the bank would be affected one way or the other by any judgment which he might render in the case. Only in such

event could it be said that because of his indebtedness he had an interest in the subject matter of the suit, and that by "interest" is meant interest in the subject matter is well recognized. "The interest which disqualifies a judge is a direct pecuniary, or direct property interest, or one which involves some individual right or privilege in the subject-matter of the litigation, where a liability or pecuniary gain must occur on the event of the suit." 33 C. J. 992, par. 135. See, also, 15 R. C. L. 528, par. 17. Therefore, if the petitioners are to be sustained in their contention, it must be because the statutory provision supplementing the common-law rule requires it.

The proposition is thus narrowed down to the question whether or not the statutory provision embodied in subdivision 4 of paragraph 500 of the Civil Code, adding to the common-law disqualifications that of bias and prejudice disassociated from interest in the subject matter of the litigation, makes an indebtedness of the judge to one of the parties a disqualification *per se.* Such indebtedness is not included either directly or by implication as a disqualifying factor in subdivisions 1, 2 or 3 of said paragraph 500, and, as it is not in terms included in subdivision 4, if it is covered at all thereby it must be by implication— that is, it must be because bias and prejudice is necessarily comprehended in the fact of indebtedness.

There can be no doubt that if it should be made to appear from facts and circumstances before the court, or the admission of the judge himself, that he was in fact rendered partial toward the party to whom he was indebted because of such indebtedness, then the disqualification would be sufficiently shown. However, in such event it would not be the indebtedness itself that would be the disqualifying factor, but the partiality or bias engendered thereby as so shown to exist. There is no such showing here. Petitioners' affidavits set forth nothing more than bare conclusions

that the respondent is biased and prejudiced because of his indebtedness, which the respondent himself in his verified answer to the petition denies, saying:

"When respondent assumed jurisdiction over this case as judge of said court, it did not occur to him that said indebtedness constituted a disqualification to hear and determine said cause; that he was not conscious of any actual prejudice or bias for or against the party plaintiff or any of the parties defendant in said cause."

Consequently, if respondent is to be disqualified under the statute, it must be because we must find as matter of law that his indebtedness to the bank constitutes bias and prejudice *per se*. It seems to us that the mere statement of this proposition is sufficient to defeat the contention of the petitioners here. We have been cited to no case, nor have we after diligent search been able to find any such reported, which goes to the extent of holding that mere indebtedness of the judge to one of the parties is in itself a disqualification. And it seems to be the rule that whenever the question of the bias and prejudice of a judge is raised, the one interposing the challenge must go further than to prove facts which in his opinion merely, or in the opinion of any other person, show bias and prejudice, and must prove the actual fact of bias, hostility, or ill will of such a character as would prevent impartial justice being done.

"The basis of the disqualification (of bias and prejudice) is that personal bias or prejudice renders the judge unable to exercise his functions impartially in the particular case, and therefore it must be shown that he is biased against or entertains ill will or hostility toward the defendant of such a character as might prevent him from giving the defendant a fair trial; and this must be shown as a matter of fact and not as a matter of opinion of the defendant or any other person. . . . A judge is not disqualified . . . to try a contested election because he is an active politi-

cian, and one of the parties to the contest is a member of his political party, or because he had expressed his opinion on election day that a challenged voter had a right to vote; or to pass on an application to enjoin registrars from filing a registration list which omits the name of certain persons opposing a faction in which he is interested and to compel them by *mandamus* to place such names on the list; or to try a case involving a violation of the liquor laws because he is strongly opposed to the sale of liquor in any form . . . nor does any disqualification result from the fact that he is convinced of the guilt of an accused. . . . The fact that a judge conducted the preliminary examination which resulted in the prosecution of accused does not, in the absence of any showing as to any personal bias or prejudice, disqualify him from presiding at the trial." 15 R. C. L. 530, par. 18, and cases therein cited.

Again we read from 15 Ruling Case Law, at page 537, paragraph 24:

"As a general rule, merely being a member of an organization, or in attendance at a meeting having for its purpose the enforcement of the criminal law on a particular subject, does not *per se* disqualify a judge to sit at the trial of one charged with a violation of that law"—citing *Crawford* v. *Ferguson,* 5 Okl. Cr. 377, 45 L. R. A. (N. S.) 519, and note, 115 Pac. 278.

It would seem from this that the facts and circumstances, which have been variously alleged and advanced from time to time as grounds of disqualification for bias and prejudice, are equally as persuasive of the ultimate fact of disqualification as the fact of indebtedness here advanced by petitioners, and yet in no case that we have found has a court held them or similar facts sufficient to constitute disqualification *per se.* Personal bias and prejudice must always be shown as an accompanying factor. We read in 33 Corpus Juris, at page 1000, paragraph 151:

"It is actual existence of prejudice on the part of a judge, not the mere apprehension of it by a party, which disqualifies."

And again at page 1001, paragraph 154:

"While if the fact be that the judge is biased or prejudiced against the litigant because of politics, it would seem to disqualify him as certainly and completely as if he were prejudiced or biased against him for any other reason, ordinarily a prejudice (by which we presume is meant an alleged prejudice) based merely or growing out of his business, political or social relations is not sufficient to disqualify him"—citing cases.

The only case we have been able to find, or to which we have been cited by counsel, bearing directly on the question of disqualification because of indebtedness of the presiding judge, is that of *Johnston* v. *Dakan,* 9 Cal. App. 522, 99 Pac. 729, in which the court said:

"The fact that the trial judge was indebted to the Savings Bank of Santa Cruz, of which plaintiff is a stockholder and one of the directors, is not a legal disqualification, and, as a matter of law, we cannot say that it shows bias or prejudice. We must presume the trial judge to be honest and solvent."

Petitioners cite cases where judges have been disqualified to preside in probate proceedings when they were indebted to the estate in probate. The questions thereby presented are manifestly not in point with the one before us here, for in such case the judge would be called upon to enforce the collection of his own obligation, and would thus, obviously, be interested in the subject matter, and his disqualification would be based upon that ground rather than upon bias and prejudice. We read, in 15 Ruling Case Law, 530, paragraph 18:

"Where a person performing the functions of a judge must decide questions of fact, his prejudice

against either of the parties sufficient to disqualify him as a juror equally disqualifies him as a judge.''

There is no intimation there that a judge ought to be disqualified upon grounds which would be deemed insufficient to disqualify a juror, and we think it fair to assume that the requirements of impartiality are not any more exacting in the case of a judge than in that of a juror. In fact, as was held by the Court of Appeals of Kentucky in the case of *McDonald's Administrator* v. *Wallsend Coal & Coke Co.*, 135 Ky. 624, 117 S. W. 349, Kentucky Court of Appeals, March 17, 1909, that:

''A judge will not be removed for the same causes always that a juror may be peremptorily challenged for. The cause to remove a judge must be one which, if he assumes to act in spite of it, involves his personal integrity, or which makes it improper that a man of integrity should preside in that matter.''

We have been cited by respondent to a number of cases holding that a juror is not disqualified merely by reason of his indebtedness to a party. In *Richardson* v. *Planters' Bank*, 94 Va. 130, 26 S. E. 413, the Supreme Court of Appeals of Virginia employed the following language in sustaining a ruling of the trial court refusing to permit jurors to be asked upon their examination whether or not they were indebted to the defendant bank:

''Confidence in the trial by jury depends upon the purity of the tribunal, and the fairness of its decisions. To secure this, the trial must be by impartial men. Purity of the tribunal is the watchful care of the law, and 'it has guarded against the influence of those passions most likely to pervert the judgment of the jurors in deciding upon the conduct and controversies of their fellow men.'

''If the juror does not stand indifferent to the cause, he is not competent. If he has any interest in the cause, or is related to either party, or has ex-

pressed or formed any opinion, or is sensible of any bias or prejudice, he is excluded by the law. The last disqualification has been applied in numerous business relations, The partner, or the clerk or other employee, of either of the parties has been held to be incompetent. But we have been cited to no case that has gone so far as to hold that a debtor of the defendant was incompetent. To hold, as a legal presumption, that such relationship would be likely to warp the judgment would be, in our opinion, to estimate too cheaply integrity under the sanction of an oath.''

This case was followed by the same court in *Mumford Banking Co.* v. *Farmers & Merchants' Bank,* 116 Va. 449, 82 S. E. 112, wherein four jurors had admitted upon *voir dire* that they were indebted to the defendant bank.

Other cases supporting this view of the law are: *Rumping* v. *Arkansas National Bank,* 121 Ark. 202, 180 S. W. 749; *Harrison* v. *Pacific Ry. & Navigation Co.,* 72 Or. 553, 144 Pac. 91; *Twitchell* v. *Thompson,* 78 Or. 285, 153 Pac. 45; *Forbes* v. *Madden,* 98 Kan. 559, 158 Pac. 850; *Thompson et al.* v. *Douglass et al.,* 35 W. Va. 337, 13 S. E. 1015.

In the last case cited the trial court had excluded as jurors five persons because they were indebted to one of the defendants, which was assigned as error. The appellate court, in holding that they had been erroneously excluded, adverted to the rule of the common law whereby challenges for cause are divided into challenges for principal cause and challenges to the favor—the former being where the cause assigned positively disqualified, the latter being causes which, though not conclusively disqualifying, yet cast suspicion of bias on the juror—principal challenges being tried by the court, challenges to the favor by three triers. Then, the opinion after pointing out that the distinction between principal challenges and challenges to the favor had become unimportant because of statutory provisions requiring all challenges for

cause to be tried by the court, held that the distinction nevertheless remained and that the cause assigned for challenge in the case before them would fall under the head of challenge to the favor, and would require, in order to be sufficient ground for exclusion of the juror, evidence of other facts and circumstances than the mere fact of indebtedness. The opinion cited and approved the language used in *Bank* v. *Smith,* 19 Johns. (N. Y.) 115, wherein the writer of the opinion said that he "would not undertake to say that the single circumstance that one was indorser on a note to the bank would of itself support a challenge to the favor, yet it was easy to imagine that an indorser might have bias, as in case the maker was insolvent, and the indorser in great danger at the hands of the bank."

Thus we get back to the proposition announced earlier in this opinion, and we think it holds as well for judge as for juror, that the fact of indebtedness, unaccompanied by other facts and circumstances and in the absence of any consciousness of bias and prejudice engendered thereby on the part of the debtor, is not *per se* a disqualification.

Counsel for petitioners say in their reply brief:

"In order that the respondent may continue to preside over the superior court of Navajo county and render final judgment in the case of *Bank of Winslow* v. *Union Bank & Trust Company,* he would have this court by implication declare that each of its own members would deem himself qualified under similar circumstances to hear a cause on appeal."

A careful consideration of the authorities which we have cited and the principles which we have endeavored to set forth in this opinion does not lead to that conclusion at all. The question of bias and prejudice because of indebtedness, in the absence of other facts and circumstances pointing to it, is a matter for the individual conscience of the judge. The respond-

ent has decided that question. We have no doubt that he is honest and sincere in his statement that he is conscious of no feeling of bias or prejudice toward petitioners or partiality toward the plaintiff bank, and that he believes and has felt all along that he could and would render judgment in the case with a fair and impartial mind, otherwise it would be inconceivable that he would be before us now attempting to maintain his jurisdiction over the case. For us to hold otherwise we would have to find that he had deliberately perjured himself. However, the writer of this opinion or each of the justices of this court concurring therein might feel individually upon the subject if called upon to determine his qualification to preside in the face of an existing indebtedness to one of the parties, and however it might appear to be the better policy for a judge to decline to preside in such event, this court could not inject any views which it might entertain in that respect into the determination of this question. This is purely a question which we must decide as we find the law to be at the present time. If it be deemed expedient to draw the line more closely than at present, that is a matter for the legislature and not for the courts.

The demurrer to the petition is sustained, and the peremptory writ of prohibition heretofore issued is quashed.

McALISTER, C. J., and LOCKWOOD, J., concur.