69 N.J. Super. 373 (1961)
174 A.2d 367
IN THE MATTER OF LILLIAN CLAWANS, CHARGED WITH CONTEMPT.
Superior Court of New Jersey, Appellate Division.
Argued September 25, 1961.
Decided October 2, 1961.
*374 Before Judges GOLDMANN, FOLEY and LEWIS.
Mr. Raymond F. Brady argued the cause for appellant (Miss Lillian Clawans, attorney pro se; Mr. Brady, on the brief).
Mr. Sanford M. Jaffe, Special Legal Assistant Prosecutor, argued the cause for respondent State of New Jersey (Mr. Brendan T. Byrne, Essex County Prosecutor, attorney; Mr. Jaffe on the brief).
*375 The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Lillian Clawans, an attorney of this State, filed appeals from two judgments of contempt committed in the face of the court (Assignment Judge Waugh of Essex County). We consolidated the appeals for briefing and argument.
The first contempt occurred December 5, 1960. Judge Waugh called the civil and criminal appeal list at 9:30 A.M. Miss Clawans was defense attorney in State v. Bell, and when the case was called the State announced it was ready. The assignment clerk informed the court that Miss Clawans had telephoned that she would be 15 or 20 minutes late. Judge Waugh then said, "All right, mark it `ready.'" The following occurred shortly after 10 A.M.:
"The Court: Miss Clawans, you have an appeal.
Miss Clawans: I am looking for my client.
The Court: Will you please come back?
Miss Clawans: I will have something to say to you when I come back.
The Court: Will you please come back, Miss Clawans?
Miss Clawans: No, I will not.
The Court: Miss Clawans, you will please come back.
Miss Clawans: I will not. I am looking for my client. I have had enough from you. You are a conspirator. I went before the Senate Judicial Committee on a complaint I made against you that you weren't qualified for a judicial position, and they held up your appointment. Then you conspired when I was in Europe on an emergency flight to see my sick aunt, you conspired against me, and you know it is not a lie. I have been trying, since I have been indicted by the Grand Jury, to appear before the Grand Jury, and I am reliably informed, and I want the world to know, that you said I can't appear before the Grand Jury until I make an application before you.
I am not going to take this stuff any more. I have suffered from you for thirteen years. This is not a new thing. It is going on for thirteen years.
The Court: Miss Clawans, are you ready on your appeal?
Miss Clawans: I have to look for my client.
The Court: Miss Clawans, are you ready on the appeal?
Miss Clawans: I don't know until I look for my client.
The Court: Miss Clawans, I am going to hold you in contempt of court for your language before me."
*376 The certification and order for sentence filed by Judge Waugh (see R.R. 3:8-1 and 4:87-1), recites that this conduct was observed and heard by numerous members of the bar who were present to answer the call, as well as by court attendants and spectators. Miss Clawans was summarily convicted of criminal contempt and, after repeated adjournments, fined $100, which she paid under protest.
The second contempt occurred February 21, 1961. Miss Clawans had pending in the Essex County Court three appeals from municipal court convictions in State v. Frazier, East Orange v. Frazier and State v. Garfinkel. At the daily call held just before 10 A.M., the prosecuting attorney informed the court that the State had had its witnesses in court on a number of occasions but that they had not been brought in that morning because the prosecutor's office had been unable to get word as to whether the defense was ready. Garfinkel, one of the defendants-appellants, then informed the court that Miss Clawans was representing him and Frazier, that she had been called away on urgent business and that she requested the cases be marked ready for 2 P.M. The cases were so marked.
February 21 was also the adjourned date for sentencing Miss Clawans for the December 5 contempt. Judge Waugh noted on the record that he had received a telephone call from her attorney, who said she could not appear because of illness and that he would send the judge a doctor's certificate. Such a certificate had arrived stating that Miss Clawans was under the doctor's care for shock and nervousness since November 21, 1960; her physical condition had been aggravated on December 5, 1960, and so far no improvement had been noted. The judge further said he had been informed of Miss Clawans' appearance before the Domestic Relations Court the preceding day, and that she would appear there again that day. He said he had telephoned her attorney and told him he was not satisfied with the doctor's certificate, and that if Miss Clawans was well enough to try cases, she was well enough to be in court on the contempt matter. The *377 judge continued the contempt proceedings to February 23. The prosecutor then advised the court that Miss Clawans had been to the prosecutor's office the day before at 4 P.M.
At 2 P.M. the prosecuting attorney informed the court that Miss Clawans had appeared in the prosecutor's office at about 1:50 P.M. and been told her cases were set down for 2 o'clock. She said she had an emergent matter to take care of and would be back at 2:15. Miss Clawans not having appeared by 2:30 P.M., Judge Waugh telephoned the Domestic Relations Court and found she was there. He was informed she would be sent over to the County Court as soon as possible. The following occurred at 2:55 P.M.:
"The Court: Call Miss Clawans in, please.
Court Officer Ernest Zoppi: She won't come in.
The Court: Let the record show that at quarter to three I received a call from Judge Lindeman's court stating that they had given Miss Clawans a message that I was awaiting her, and that she was on her way over. Call the two defendants in. Mr. Buckley, did you ask Miss Clawans if she will come in?
Mr. Vincent Buckley: I will now. One of the officers did.

(Miss Clawans enters the court room.)
The Court: Sit up at counsel table, please.
Miss Clawans: What is that?
The Court: Please come up to the counsel table. These two appeals were ready at ten o'clock this morning. I received word from one of the two gentlemen, the one on the left, is that Mr. Garfinkel?
Mr. Garfinkel: That's right.
The Court: That you said you had an emergent matter and you would be here at two o'clock. May I ask what the emergent matter was?
Miss Clawans: No, I refuse to tell you.
The Court: And at two o'clock we called the case and were told then by the Prosecutor you stopped down there at ten minutes to two and said you had an emergent matter but would be back at quarter past two. I found out that you were over at Judge Lindeman's. I called and you were there. Are these cases ready?
Miss Clawans: The only one that would be ready would be the Garfinkel case. The other case I am not ready on.
The Court: Why not?
Miss Clawans: I am just not ready. That's all.
The Court: All right.
*378 Miss Clawans: I have been sick, and these people have been trying to get me, and I haven't been able to physically handle it for them, but I am ready on the Garfinkel case. And I am sick at this moment too."
After adjourning Frazier's appeals to March 6, 1961 so that he might obtain another attorney, and assigning the Garfinkel case for immediate trial, Judge Waugh held Miss Clawans in contempt in the face of the court and fined her $100 "for your refusal to appear on time this morning, and because you will not tell me when I asked why you weren't here this morning." The certification and order for sentence filed by Judge Waugh the same day recites the further reason that when Miss Clawans advised she was ready to proceed with only one of her cases and was asked why she was not prepared as to the others, she declined to give any reason therefor and retorted, "I am just not ready. That's all." The fine was paid under protest.
The power of a court to punish summarily for contempt committed in the actual presence of the court has long been recognized. R.R. 3:8-1 and 4:87-1, similar to Rule 42(a) of the Federal Rules of Criminal Procedure, substantially restated the existing procedure:
"A criminal contempt may be punished summarily if the judge certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. The order of contempt shall recite the facts and shall be signed by the judge and entered of record."
See also, N.J.S. 2A:10-1.
Summary convictions for contempt are reviewable on appeal both upon the law and the facts, the appellate court being directed to give such judgment "as it shall deem to be lawful and just under all the circumstances of the case and shall enforce the same as it shall order." R.R. 1:5-2, 2:5; see also N.J.S. 2A:10-3.
The power summarily to punish contempts committed in the face of the court, "although arbitrary in its nature and liable to abuse, is absolutely essential to the protection *379 of the courts in the discharge of their functions." Ex parte Terry, 128 U.S. 289, 313, 9 S.Ct. 77, 83, 32 L.Ed. 405 (1888). To deny courts this "right of self-preservation" (Marshall v. Gordon, 243 U.S. 521, 544, 37 S.Ct. 448, 61 L.Ed. 881 (1917)) would, as was said in Board of Health, Weehawken Tp. v. N.Y. Central R.R. Co., 10 N.J. 284, 290 (1952), "largely nullify their status and ability to function properly as an essential part of our judicial structure."
Appellant does not dispute this inherent power to punish summarily for contempt in the face of the court, but claims that (1) she was deprived of due process under the United States Constitution and the Constitution and laws of the State of New Jersey; and (2) Judge Waugh violated the Canons of Judicial Ethics, particularly Canons 3, 4, 11, 15 and 29, when he summarily adjudged her in contempt. Her arguments reduce themselves to a single contention: she was entitled to be judged by an impartial tribunal, and Judge Waugh was not and could not be impartial because of ill feeling which existed between them. In support of this claim, she recites the following, which she says may be "gleaned" from the record:
1. Her belief that she had been unfairly discriminated against by Judge Waugh over a 13-year period.
2. Her belief that she had unfairly been prevented from appearing and testifying before the grand jury in connection with a pending indictment against her.
3. Her belief that she had been subjected to a form of conspiracy.
4. Her belief that she was unfairly forced into trials.
5. Her proceedings against Judge Waugh in 1950 when she sought his general disqualification as a judge in all future cases in which she appeared as attorney. The reference here is to Clawans v. Waugh, 10 N.J. Super. 605, an Essex County District Court case heard by a special tribunal which dismissed the challenge.
6. Her appearance before the Senate Judiciary Committee in March 1956 to oppose Judge Waugh's reappointment.
Appellant argues that under the existing circumstances the proper procedure would have been to certify the matter to *380 another judge for a full hearing under proper safeguards. Failure to do so was prejudicial.
Appellant places heavy reliance on Offutt v. United States, 348 U.S. 11, 75 S.Ct. 11, 99 L.Ed. 11 (1954). The case is not apposite. There judge and counsel engaged in continuous wrangling, marked by personal attacks and bitterness on both sides. The judge committed the attorney for criminal contempt in the face of the court. The Supreme Court reversed and remanded for a hearing before another judge. But see Sacher v. United States, 343 U.S. 1, 72 S.Ct. 451, 96 L.Ed. 717 (1952), rehearing denied 343 U.S. 931, 72 S.Ct. 756, 96 L.Ed. 1341 (1952), referred to in Offutt, and Annotation, 64 A.L.R.2d 600, 614-623; (1959).
The record does not bear out appellant's contention that counsel and the judge were personally embroiled with each other. None of the half-dozen reasons cited as indicating Judge Waugh's ill feeling toward Miss Clawans is supported by fact. At best, they indicate a unilateral ill feeling on her part toward the judge. Four of them reflect no more than her beliefs.
Other cases cited by appellant for the proposition that she was entitled to be tried before an impartial tribunal, have no pertinent application in the circumstances hereunder consideration. They dealt with criminal contempts not in the face of the court. Such cases are covered by R.R. 3:8-2 and 4:87-2. See Oscar Barnett Foundry Co. v. Crowe, 80 N.J. Eq. 109 (Ch. 1909), affirmed o.b. 80 N.J. Eq. 258 (E. & A. 1912); In re Verdon, 91 N.J.L. 491 (Sup. Ct. 1918); Larken v. Local No. 560, etc., 103 N.J. Eq. 195 (Ch. 1928); Van Sweringen v. Van Sweringen, 22 N.J. 440 (1956), reversing 34 N.J. Super. 394 (App. Div. 1955). See also, State v. Muraski, 6 N.J. Super. 36 (App. Div. 1949); Swanson v. Swanson, 10 N.J. Super. 513 (App. Div. 1960); State v. Deutsch, 34 N.J. 190 (1961), cited by appellant. The court's reasoning in those cases cannot be applied in the present instance since *381 the situation before us is sui generis: the case is tried summarily by the judge in whose presence the offense was committed, and this is in strict conformity with our requirements of due process.
The proceedings of December 5, 1960 demonstrate the remarkable patience and restraint shown by Judge Waugh. Considering the charges leveled at him by appellant at the time, and the fact that numerous persons were within hearing, there was no path open to him except to exercise his summary power. The office, if not the man himself, deserved more respect than was shown by Miss Clawans' intemperate comments.
The February 1961 offense also constituted a direct contempt. Miss Clawans' failure to appear at 10 A.M. to answer the call, or at the adjourned hour of 2 P.M., and her flat refusal to give the court any explanation for her tardiness or for not being ready to proceed with the Frazier cases, constituted contempt in the face of the court. See 59 A.L.R. 1272 (1929). In State v. Zarafu, 35 N.J. Super. 177, 180 (1955), we pointed out that our cases have uniformly held that any act or conduct which obstructs or tends to obstruct the course of justice, constitutes a contempt. In re Caruba, 139 N.J. Eq. 404 (Ch. 1947), affirmed 140 N.J. Eq. 563 (E. & A. 1947); certiorari denied 335 U.S. 846, 69 S.Ct. 69, 93 L.Ed. 396 (1948); and see N.J.S. 2A:10-1(a) and (c).
Appellant pursued a course of contumacious conduct which invited the summary treatment finally visited upon her. We find no denial of due process nor any trespass upon the Canons of Judicial Ethics.
Affirmed.