410 P.2d 674

Martin S. ROGERS, Petitioner,

v.

The SUPERIOR COURT of the State of Arizona, IN AND FOR the COUNTY OF PIMA, and Alice N. Truman, a Judge thereof, and Frances C. Gibbons, Clerk of the Superior Court of Pima County, Respondents.

No. 2 CA–CIV 173.

Court of Appeals of Arizona.

Feb. 10, 1966.

Johnson & Couser, by John William Johnson, Tucson, for petitioner.

HATHAWAY, Judge.

This court has heretofore issued an alternative writ of prohibition directed to the respondents staying all further proceedings in the superior court.

Briefly, the allegations of petitioner which remain uncontroverted are as follows. Petitioner filed a pleading in superior court relative to the custody of certain minor children, and on a show cause hearing in the matter, the cause was ordered transferred to the juvenile court for hearing on September 22, 1965. A new petition was filed in juvenile court and a juvenile court case number was assigned to the matter. Petitioner received notice of a child custody hearing scheduled for October 1, 1965. He did not appear, however, because he had been led to believe by a juvenile court attaché that his appearance would be superfluous as the juvenile court intended to proceed independently.

On or about October 5, 1965, petitioner received in the mail a certified minute entry to the effect that he had been held in contempt of court by the respondent judge. The minute entry order recited that petitioner "is held in Contempt of this Court for his failure to appear in this action or to arrange for a continuance." The order further provided that payment of the sum of $100 to the clerk of the superior court on or before 5 p. m. on Friday, October 8, 1965 would purge the contempt.

Petitioner further alleges that failure to pay the aforesaid sum would result in his arrest by virtue of a verbal order purportedly issued by the respondent judge. The record before us discloses no order to that effect. On October 8, 1965 at 3:26 p. m., petitioner filed a document in superior court, Pima county, labelled "Affidavit and Peti-

tion to Set Aside Contempt" and on the same date filed in this court his petition for a writ of prohibition.

We are not here concerned with the court's power to summarily punish for a direct contempt committed in the presence of the court without the procedural safeguards available to one called upon to meet a contempt charge in a formal hearing. We have a situation where an attorney's failure to appear was deemed to be contempt of court without the attorney being afforded an opportunity to be heard.

█ The majority view in this country, and the better view to our thinking, is that an attorney's absence constitutes an indirect contempt. A court cannot ascertain by its own observation and without inquiry the operational facts from which an inference of wilfulness or of wrongful intent can be drawn. Therefore, a prerequisite to punishment of an attorney for contempt in failing to appear in court is advance notice of the charge and an opportunity to be heard and to present testimony in his own defense. Lee v. Bauer, Fla., 72 So.2d 792, 793 (1954); Ex parte Hill, 122 Tex. 80, 52 S.W.2d 367, 368 (1932); State v. Winthrop, 148 Wash. 526, 269 P. 793, 796, 59 A.L.R. 1265 (1928).

A.R.S. § 12–864 provides:

"Contempts committed in the presence of the court or so near thereto as to obstruct the administration of justice, and contempts committed by failure to obey a lawful writ, process, order, judgment of the court, and all other contempts not specifically embraced within this article may be punished in conformity to the practice and usage of the common law."

█ At common law the procedure required that the contemnor be notified of the contempt charge and the nature thereof and that he be given an opportunity to be heard thereon before he may be punished

therefor. In re Quan, 39 Ariz. 13, 19, 3 P.2d 522 (1931). As succinctly stated by Mr. Justice Douglas in the very recent case of Harris v. United States, 382 U.S. 162, 86 S.Ct. 352, 15 L.Ed.2d 240, decided December 6, 1965:[1]

"Summary procedure, to use the words of Chief Justice Taft, was designed to fill 'the need for immediate penal vindication of the dignity of the court.' * * * [T]he limits of the power to punish for contempt are 'the least possible power adequate to the end proposed.' In the instant case, the dignity of the court was not being affronted; no disturbance had to be quelled; no insolent tactics had to be stopped." 86 S.Ct. at 354, 15 L.Ed.2d at 242.

█ Where at common law and under statutes courts may summarily punish for direct contempts, the personal knowledge of the court in whose presence the act was committed takes the place of evidence. Where, however, the contempt is an indirect one, the alleged contemnor may not be condemned without due process of law— notice of the charge and a hearing thereon. As pointed out in Ex parte Clark, 208 Mo. 121, 106 S.W. 990, 997, 15 L.R.A., N.S., 389 (1907), the absence of an attorney may be susceptible of many innocent explanations, and since none of these explanations can be within the observation or hearing of a judge, the court should deal with the absence as not having occurred in the presence of the court. The summary contempt adjudication of petitioner is contra to the principles herein enunciated, and the court was without jurisdiction essential to sustain a judgment for contempt.

██ Notwithstanding the views herein expressed, we do not believe the petitioner is entitled at this stage to avail himself of the relief afforded by prohibition. As a general rule, a condition precedent to the granting of a writ of prohibition is an

---

1. Witness' refusal to comply with District Court's direction to answer questions before grand jury was held not to be within the federal rule authorizing summary punishment for contempt.

application to the inferior court for relief. 73 C.J.S. Prohibition § 20a; Pintek v. Superior Court, 78 Ariz. 179, 187, 277 P.2d 265 (1954); Conkling v. Crosby, 29 Ariz. 60, 69, 239 P. 506 (1925). As stated in *Conkling,* supra:

"This court will always scrutinize carefully the whole situation when application is made for this extraordinary writ, and in every case will refuse to grant it in the absence of a preliminary request made by the applicant to the lower court * * *. The courtesy which counsel and litigants owe to the judiciary and the respect and consideration due to the courts of the state would prevent our doing otherwise." 29 Ariz. at 70, 239 P. at 510.

It seems to us that petitioner has a duty to pursue the matter further in the lower court, thereby affording that court an opportunity to consider the jurisdictional defect. Members of the judiciary do not profess to be infallible and members of the bar owe to them a duty to point out error by appropriate means and in an orderly process. It appears that petitioner has made an attempt in this direction by filing a "petition to set aside the contempt," but simultaneously therewith invoked the aid of this court by filing a petition for a writ of prohibition. We hold that the latter petition was premature and that petitioner's remedy at this juncture is to procure a ruling on his petition below.

■ Where the question of an inferior court's jurisdiction has been raised below and remains undetermined, a writ of prohibition will not issue to restrain further proceedings below. Noland v. Superior Court, 26 Cal.App.2d 708, 80 P.2d 76, 77 (1938); Talbot v. McCarrey, 15 Alaska 344, 218 F.2d 565, 567 (9th Cir.1955). It is presumed that any valid objection properly brought to the attention of the lower court will prevail, thereby obviating all necessity for a writ of prohibition. Citizens Utilities Co. of Calif. v. Superior Court, 59 Cal.2d 805, 31 Cal.Rptr. 316, 323, 382 P.2d 356 (1963); Sayegh v. Superior Court, 44 Cal. 2d 814, 285 P.2d 267, 268 (1955). We have no doubt that the court in its action upon the petition pending below will be guided by the views which we have expressed.

For the reasons stated, the alternative writ of prohibition is quashed.

KRUCKER, C. J., and MOLLOY, J., concurring.