388 A.2d 22.

Lucille Dorothy Peltier *v*. Robert Ernest Peltier.

JULY 12, 1978.

Present: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger,  JJ.

JOSLIN, J.   This case concerns an attorney's susceptibility to summary punishment for contempt for failure to attend court at an appointed time.

On July 8, 1976, a divorce action was heard in part in the Family Court before Justice William R. Goldberg and was then recessed until 12 noon the following day. At the appointed time on that day both parties and the wife's attorney were present in court, but Aram K. Berberian, the husband's attorney, was absent. When he arrived at 2:40 p.m., he apologized for his tardiness and explained that several short criminal matters previously scheduled for hearing on that morning in the Third Division District Court had consumed more time than originally anticipated. Notwithstanding his apology and his explanation, and despite his insistence that he should not be summarily punished for his tardiness, he was ordered to pay $150 into the registry of the court for the use and benefit of opposing counsel, who had been unduly detained by reason of Berberian's late arrival. Berberian appealed, and the hearing in the divorce proceeding then resumed.[1]

Both parties agree that an attorney who inexcusably fails to attend court at an appointed time may be punished for contempt. *See Rogers* v. *Superior Court,* 2 Ariz. App. 556,

---

[1]Whether an appeal is the proper vehicle for bringing this contempt adjudication to this court at this time was neither briefed nor argued by the parties and has not been raised sua sponte by this court. Our failure to consider the question, however, should not be construed as an endorsement of the practice.

558, 410 P.2d 674, 676 (1966); *Smith* v. *District Court,* 150 Colo. 136, 139-40, 371 P.2d 271, 272-73 (1962); *Geraty* v. *Carbona Products Co.,* 16 Ill. App. 3d 702, 708, 306 N.E.2d 544, 549 (1973). They disagree, however, on whether that failure, if contemptuous, may be summarily punished as a direct contempt committed in the immediate view and presence of the court, or whether instead, it is an indirect contempt requiring a separate hearing prior to punishment.

On that question there is a diversity of opinion. The majority view, and the one which in our judgment is the better reasoned, is that such a failure constitutes an indirect contempt. *Rogers* v. *Superior Court,* 2 Ariz. App. at 558, 410 P.2d at 676; *Lee* v. *Bauer,* 72 So. 2d 792, 793 (Fla. 1954); *Geraty* v. *Carbona Products Co.,* 16 Ill. App. 3d at 708, 306 N.E.2d at 549; *In re Henry,* 25 Mich. App. 45, 53, 181 N.W.2d 64, 67 (1970); *State ex rel. Wendt* v. *Journey,* 492 S.W.2d 861, 863 (Mo. App. 1973); *Roselle* v. *State,* 509 P.2d 486, 488 (Okla. Crim. 1973); *State* v. *Winthrop,* 148 Wash. 526, 532, 269 P. 793, 796 (1928); *contra, Lyons* v. *Superior Court,* 43 Cal. 2d 755, 759, 278 P.2d 681, 683 (1955); *In re Clawans,* 69 N.J. Super. 373, 380-81, 174 A.2d 367, 372 (1961).

At the root of the majority approach is the distinction between direct and indirect contempt. If the essential elements of the allegedly contemptuous act are committed in the immediate view and presence of the court, the personal knowledge of the court takes the place of evidence and the contempt is direct, and disposition may be summary. If, however, the court has not observed all the elements and is required to establish whether or not they occurred, the contempt is indirect and a plenary disposition is necessary. *In re Oliver,* 333 U.S. 257, 275, 68 S. Ct. 499, 508-09, 92 L. Ed. 682, 695 (1948).

The courts following the majority view have reasoned that an attorney's absence or tardiness, although as obstructive to the trial and as much within the court's view and presence as

any disruptive conduct committed in the courtroom, may nonetheless be excusable for a variety of reasons. Because none of those reasons will have occurred within the observation or hearing of the court, they can only be brought to its attention by evidence. That being so, the misconduct constitutes indirect rather than direct contempt, and consequently the contemnor is entitled under the fourteenth amendment to certain procedural safeguards which this court, in another context, and echoing the Supreme Court's ruling in *In re Oliver*, 333 U.S. at 275, 68 S. Ct. at 508-09, 92 L. Ed. at 695, said:

> "that one charged with contempt of court be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a chance to testify and call other witnesses in his behalf, either by way of defense or explanation."

*State* v. *Costantino*, 107 R.I. 215, 218, 266 A.2d 33, 34 (1970); *accord, Noble* v. *Siwicki*, 97 R.I. 288, 292-93, 197 A.2d 298, 301 (1964).

Omission of these procedural safeguards will not necessarily be fatal, however, for they may be waived. An attorney, for example, may voluntarily appear before the court for the purpose of explaining his tardiness. If he does, and if he is given the same opportunity to defend as if a rule to show cause had been issued, he will be deemed to have waived any error that may have been committed in not adjudicating the contempt matter at a separate hearing. *People* v. *Westbrooks*, 242 Ill. App. 338, 341-42 (1926).

In this case, although Berberian explained his misconduct, he nonetheless insisted that he was entitled to all of the rights of one accused of an indirect contempt. Inasmuch as all those rights were not afforded him, the judgment of contempt must be reversed and the case must be heard again to determine if an indirect contempt was committed. That hearing

should be initiated by a notice of charges which in form and content, as well as in the manner of the giving of that notice, shall conform as closely as the circumstances permit to the notice requirements prescribed for criminal contempts by Super. R. Crim. P. 42(b).

Because of the possibility of recurrence, we respond to Berberian's further contention that the contempt issue should have been adjudicated before a different trial justice. Certainly, Berberian's conduct did not "constitute the kind of personal attack on [the trial justice] that, regardless of his reaction or lack of it, he would be '[un]likely to maintain that calm detachment necessary for fair adjudication.' " *Taylor* v. *Hayes*, 418 U.S. 488, 501, 94 S. Ct. 2697, 2704, 41 L. Ed. 2d 897, 909 (1974); *quoting Mayberry* v. *Pennsylvania*, 400 U.S. 455, 465, 91 S. Ct. 499, 505, 27 L. Ed. 2d 532, 540 (1971). Nor do we believe, judging from the record before us, that there is " 'such a likelihood of bias or an appearance of bias that the judge [will be] unable to hold the balance between vindicating the interests of the court and the interests of the accused.' " *Taylor* v. *Hayes*, 418 U.S. at 501, 94 S. Ct. at 2704, 41 L. Ed. 2d at 909, *quoting Ungar* v. *Sarafite*, 376 U.S. 575, 588, 84 S. Ct. 841, 849, 11 L. Ed. 2d 921, 930 (1964). On remand, therefore, the hearing may be conducted before Justice Goldberg.

The appeal is sustained, the judgment appealed from is reversed, and the case is remanded to the Family Court for further proceedings.

*Michael F. Horan*, for petitioner.

*Plantations Legal Defense Services, Inc.*, for respondent.