IN THE

# ARIZONA COURT OF APPEALS

DIVISION TWO

ROGER H. CONTRERAS,
*Appellee*,

*v.*

NANCY BOURKE,
*Appellant*.

No. 2 CA-CV 2023-0146-FC
Filed August 9, 2024

Appeal from the Superior Court in Cochise County
No. DO200901390
The Honorable Timothy B. Dickerson, Judge

**AFFIRMED**

COUNSEL

Pahl & Associates, Tucson
By Danette R. Pahl
*Counsel for Appellee*

Nancy Bourke, Sierra Vista
*In Propria Persona*

## OPINION

Presiding Judge O'Neil authored the opinion of the Court, in which Judge Brearcliffe concurred and from which Judge Sklar dissented.

O' N E I L, Presiding Judge:

¶1 Nancy Bourke appeals from an order designating her a vexatious litigant and imposing pre-filing restrictions in proceedings related to the dissolution of her marriage to Roger Contreras. She argues the judge who issued the order had a conflict of interest. She also contends the order lacks an evidentiary basis and violates due process. We affirm.

## Background

¶2 We view the evidence in the light most favorable to sustaining the superior court's findings. *See Vincent v. Nelson*, 238 Ariz. 150, ¶ 17 (App. 2015). In 2009, Contreras filed a petition to dissolve his marriage to Bourke in Cochise County Superior Court. *See In re Marriage of Contreras & Bourke*, No. 2 CA-CV 2014-0158, ¶ 2 (Ariz. App. Aug. 13, 2015) (mem. decision). Since the dissolution of their marriage, Bourke and Contreras, who are the parents of a minor child, have engaged in "almost non-stop, ferociously contested litigation." *In re Marriage of Contreras & Bourke*, No. 2 CA-CV 2019-0205-FC, ¶ 2 (Ariz. App. June 17, 2021) (mem. decision).

¶3 Contreras filed a motion requesting that Bourke be designated a vexatious litigant in 2019. The presiding judge, after recusing himself from the dissolution case in 2020, apparently learned about the vexatious litigant motion in late 2021. Noting that a vexatious litigant designation must be made by the presiding judge or a designee, the judge invited briefing. Contreras took no further action at that time, so the judge dismissed the motion in early 2022. When Contreras later renewed the motion in December 2022, the same presiding judge heard it. After allowing time for responsive pleadings, the presiding judge entered an order in May 2023 designating Bourke a vexatious litigant and restricting her from filing "any motions or notices" in the dissolution case without the express permission of the court hearing the dissolution case.

¶4 Bourke appealed. Ordinarily, because the vexatious litigant designation is entered by an administrative order, we would be limited to

special action review.[1] *Madison v. Groseth*, 230 Ariz. 8, n.8 (App. 2012). In this case, however, the superior court's findings of vexatious conduct and the resulting limitations were limited exclusively to Bourke's conduct in the dissolution case. Thus, the order designating Bourke a vexatious litigant is essentially a form of injunctive relief, and we have jurisdiction under A.R.S. § 12-2101(A)(5)(b).

## Discussion

**¶5** Bourke's appeal is limited to the order designating her a vexatious litigant. "Arizona courts possess inherent authority to curtail a vexatious litigant's ability to initiate additional lawsuits" by imposing pre-filing restrictions. *Madison*, 230 Ariz. 8, ¶ 17. The inherent powers of the judiciary do not depend on any statute. *State ex rel. Mahoney v. Superior Court*, 78 Ariz. 74, 77 (1954) (court's "inherent powers" are "powers which were not given by legislation and which no legislation can take away"). Nevertheless, our legislature has also enacted A.R.S. § 12-3201, which confers an additional source of authority to "designate a pro se litigant a vexatious litigant," restricting the litigant from filing "a new pleading, motion or other document without prior leave of the court." Because the superior court cited the statute as the basis for its order, we review the order primarily through that lens.

## I. Judicial Disqualification

**¶6** Bourke first argues that the presiding judge was biased in favor of Contreras. She claims the judge "admitted his inability to be impartial" when he voluntarily recused himself from the dissolution case, which she asserts was due to a conflict of interest related to Contreras. She further asserts the judge's actions in the vexatious litigant proceeding were "void ab initio" because of his previous recusal.

**¶7** Whatever the merits of Bourke's claim that the presiding judge was biased, the judge's actions in the vexatious litigant proceeding were not automatically void. The fact that a judge erred by hearing a case

---

[1]We lack jurisdiction over administrative orders. *Madison v. Groseth*, 230 Ariz. 8, n.8 (App. 2012); *see* A.R.S. § 12-2101. Bourke asserts the superior court erred by "publishing" the vexatious litigant designation in an administrative order and asks this court to "order the immediate de-publication" of the order. Because we do not have jurisdiction over the administrative order, we do not address this argument.

does not mean the judge lacked the power to act. *See Taliaferro v. Taliaferro*, 186 Ariz. 221, 222-23 (1996) (failure to honor peremptory notice of change of judge, "even if . . . erroneous," cannot shrink "the power of the court to entertain [the] action" and cannot be challenged on appeal); *cf. State v. Schrock*, 149 Ariz. 433, 439-40 (1986) (criminal verdict not void even though received by recused judge in violation of prior version of Rule 10.2, Ariz. R. Crim. P.). Moreover, even assuming further action in the dissolution case would have been improper after recusal, it does not follow that the judge exceeded his authority by acting on the vexatious litigant motion when it was later referred to him as presiding judge. Section 12-3201(A) provides that a vexatious litigant motion must be heard by "the presiding judge of the superior court or a judge designated by the presiding judge of the superior court." Thus, when Contreras filed his renewed motion, regardless of which judge was hearing the dissolution case, it was for the presiding judge to either decide the motion or designate a different judge to do so. *See* A.R.S. § 12-3201(A); *cf. Harnage v. Browning*, 256 Ariz. 387, ¶¶ 7-8 (2023) (case "assigned" to judge scheduled to hear trial or specific legal issue).

¶8 The circumstances of this case are unique, insofar as the motion to designate Bourke a vexatious litigant was based primarily on her conduct in a single case from which the presiding judge had previously recused. We need not decide, however, whether the presiding judge's recusal from the dissolution case as an assigned judge also required him to recuse from the related vexatious litigant proceeding. Even when genuine grounds for disqualification exist, the means for a party to challenge a judge for cause is by timely filing an affidavit alleging statutory grounds for disqualification. *See John Munic Enters., Inc. v. Laos*, 235 Ariz. 12, ¶ 4 (App. 2014) (judicial bias argument waived by failure to request disqualification under A.R.S. § 12-409 or in motion for reconsideration); § 12-409; Ariz. R. Fam. Law P. 6.1; *see also* Ariz. R. Civ. P. 42.2. Thus, to the extent the prior recusal served as cause to believe the judge was biased or otherwise disqualified, Bourke was required to file an affidavit seeking a change of judge for cause within twenty days of her discovering such grounds. § 12-409; Ariz. R. Fam. Law P. 6.1(a), (c); *see also* Ariz. R. Civ. P. 42.2(b), (d). Short of that, Bourke could have filed a notice of change of judge as a matter of right. Ariz. R. Fam. Law P. 6; *see also* Ariz. R. Civ. P. 42.1; *Harnage*, 256 Ariz. 387, ¶¶ 7-8.

¶9 Notwithstanding the presiding judge's recusal from the dissolution case, Bourke took no action when he heard the initial vexatious litigant motion and invited briefing. When Contreras subsequently filed

his renewed motion, Bourke knew no later than by January 10, 2023, that the motion would be heard by the same judge. On that date, Bourke filed a request with the presiding judge asking that he dismiss Contreras's renewed motion. She was aware then of the judge's prior recusal. She mentioned it, in passing, in her response to the vexatious litigant motion on February 10, 2023; but she did not request reassignment or recusal, formally or otherwise. Instead, she litigated the motion on the merits, through her response and through numerous related pleadings, until the judge entered a ruling in May 2023. Only now, for the first time on appeal, does Bourke raise her argument that the judge was biased.

¶10        Bourke's failure to raise the issue below not only deprived the superior court of an opportunity to address the substance of any purported conflict, it also deprives us of both a decision and record against which to assess Bourke's allegation of bias beyond the fact of the judge's recusal. *Trantor v. Fredrikson*, 179 Ariz. 299, 300 (1994) ("errors not raised in the trial court cannot be raised on appeal" because court "should be afforded the opportunity to correct any asserted defects before error may be raised on appeal"). Based on the plain operation of the rules, Bourke has waived her claim. Ariz. R. Fam. Law P. 6.1(c); *see* Ariz. R. Civ. P. 42.2(d); *John Munic Enters., Inc.*, 235 Ariz. 12, ¶ 4.

¶11        We recognize that no mere procedural rule can strip away the right to a trial before a fair and impartial judge. *Marsin v. Udall*, 78 Ariz. 309, 312 (1955). The right can, however, be waived. *Id.* And our rules of procedure "prescribe the conditions under which a party may be said to have consented that his case be tried before a particular judge, i. e., whether he has waived his right to challenge the fairness of the judge, provided it does not operate to deprive him of the right." *Id.* We would not apply waiver, for example, where application of the rules would effectively deprive a party of an opportunity to challenge a judge for cause. *E.g.*, *id.* (under older rule, failure to file affidavit at least three days before trial as required did not waive right because litigant "did not know who the trial judge was to be in time to comply").[2] But so long as a party knows about

---

[2]The dissent's reliance on *State v. Emanuel*, 159 Ariz. 464 (App. 1989), is inapposite for this reason. There, the defendant had no opportunity to file a written motion challenging the judge before the sentencing hearing because the defendant only learned about the judge's extrajudicial investigation during the course of the hearing. *Emanuel*, 159 Ariz. at 466. When the defendant discovered what the judge had done, and before imposition of sentence, the defendant promptly "interrupted the trial

the grounds for disqualification and has an opportunity to challenge a judge for cause, *see id.*, the failure to timely file an affidavit waives the challenge, *see John Munic Enters., Inc.*, 235 Ariz. 12, ¶ 4. Although a trial court nonetheless has discretion to consider an untimely challenge for cause, *State v. Carver*, 160 Ariz. 167, 172 (1989), by the time a judge has heard evidence or decided the ultimate issues in dispute, "it is too late to disqualify him on the ground of bias and prejudice." *Marsin*, 78 Ariz. at 315; *see also State v. Quintana*, 92 Ariz. 308, 311 (1962).

**¶12** Here, of course, Bourke never raised the issue before the superior court at all. She raised it in the first instance on appeal. "This, we have repeatedly held, cannot be done." *Smith v. Rabb*, 95 Ariz. 49, 54 (1963).[3] Bourke's passing reference to the fact of the judge's recusal was not sufficient. *See Carver*, 160 Ariz. at 172 (litigant "[p]lacing his perceptions and concerns 'on the record'" not sufficient to be deemed challenge for cause). "The privilege to challenge the judge's fairness carries with it the concomitant right to willingly submit to trial." *Marsin*, 78 Ariz. at 312. Bourke's passing comment highlights that when she proceeded to litigate the motion on the merits without a challenge for cause, she did so knowing the judge had previously recused. *Id.* ("Of course, one may with knowledge of the facts, consent that his case be tried before a judge he thinks is biased and prejudiced.") She voluntarily relinquished her right to challenge the judge. *See id.*

**¶13** Our dissenting colleague effectively treats Rule 2.11 of the Code of Judicial Conduct, *see* Ariz. R. Sup. Ct. 81, R 2.11, as a separate basis to disqualify a judge, independent of § 12-409 and not subject to the timeliness and waiver provisions of the rules governing challenges for

---

judge" and orally moved to disqualify him. *Id.* The judge denied the motion. *Id.* The court of appeals therefore opined that "'waiver' is not a viable claim or defense where a violation . . . is raised prior to actual sentencing." *Id.* at 468. It did not suggest that such a challenge could be raised for the first time on appeal. *See id.* at 468-69.

[3]The dissent cites *Conkling v. Crosby*, 29 Ariz. 60 (1925), to suggest otherwise. But our supreme court has rejected that argument, noting that "even in the Conkling case, the challenge was made before the lower court had entered final judgment." *Smith*, 95 Ariz. at 54. In any event, the present rules governing timeliness, which now prescribe the conditions for waiver of challenges for cause, were not in effect when *Conkling* and *Smith* were decided. *See* Ariz. R. Fam. Law P. 6.1(c); *see* also Ariz. R. Civ. P. 42.2(d).

cause. *See* Ariz. R. Fam. Law P. 6.1(c); Ariz. R. Civ. P. 42.2(d). The code itself cautions against this approach when it provides that it is not "intended to be the basis for litigants to seek collateral remedies against each other or to obtain tactical advantages in proceedings before a court." Ariz. R. Sup. Ct. 81, Scope. The statute and rules governing judicial disqualification allow removal of a judge for bias or prejudice only if it would deny a party a fair trial. § 12-409; *see* Ariz. R. Fam. Law P. 6.1(a) ("A party seeking a change of judge for cause must establish grounds by affidavit as required by A.R.S. § 12-409."); Ariz. R. Civ. P. 42.2(b). We believe the dissenting opinion conflates a judge's discretion to recuse with a party's right to seek disqualification.

¶14 Applying Rule 2.11(A), our colleague suggests a prior recusal is enough that a judge's impartiality might reasonably be questioned, triggering a duty to recuse. But even if we were to treat the Code of Judicial Conduct as independent grounds for disqualification, our supreme court has explained that a judge's "impartiality might reasonably be questioned" based on an "appearance of interest or prejudice" only "when the judge abandons his judicial role and acts in favor of one party or the other." *Carver*, 160 Ariz. at 172-73. It is not obvious that a previous recusal, even in the same case, is enough to demonstrate such bias. A judge may voluntarily recuse for reasons that are not grounds for disqualification. *See Zuniga v. Superior Court*, 77 Ariz. 222, 224 (1954) ("[A] judge may . . . recuse himself even though the reason given might not be sufficient to form the basis of a legal disqualification."). In this case, we can only speculate as to whether the reasons for the presiding judge's earlier recusal from the dissolution case would have applied to the vexatious litigant proceeding. Those reasons might not have been relevant to that proceeding. They might no longer have existed by the time the judge heard the motion. Indeed, they might not have been disqualifying at all.

¶15 Regardless, even claims of actual bias may be waived. *E.g.*, *Marsin*, 78 Ariz. at 312. We decline to hold that a claim that falls short of the requirements of § 12-409 should evade waiver when a substantive claim of actual bias would not. Even if a prior recusal is disqualifying under the code, Bourke was no less required to timely raise the issue than if the judge was disqualified for any other reason. A judge's independent obligation to disqualify himself applies whenever "disqualification is required." Ariz. R. Sup. Ct. 81, R 2.11 cmts. 1, 2. A meritorious claim of disqualification, therefore, necessarily implicates the judge's own duty not to hear a case. Yet that duty does not obviate a party's obligation to timely raise the issue upon discovery. *See* Ariz. R. Fam. Law P. 6.1; Ariz. R. Civ. P. 42.2. Nor does

it negate the waiver provisions of our rules governing challenges for cause. *See* Ariz. R. Fam. Law P. 6.1(c); Ariz. R. Civ. P. 42.2(d). Waiver is meaningless if it applies only to meritless claims.

**¶16** We are similarly unpersuaded that a voluntary recusal is analogous to a change of judge as a matter of right. *See* Ariz. R. Fam. Law P. 6; Ariz. R. Civ. P. 42.1. Even if we could find that an analogy controls where a rule does not apply, this one does not hold. When a party files a proper peremptory notice of change of judge, the judge's removal from the case is compulsory, not voluntary: the rules specifically require the judge to "proceed no further in the action." Ariz. R. Fam. Law P. 6(g)(1); Ariz. R. Civ. P. 42.1(f)(1). The rules impose no such requirement on a judge who voluntarily recuses, nor do they limit a judge's later exercise of jurisdiction. Indeed, where a judge wrongly dishonors a proper peremptory notice, our supreme court has rejected the argument that the judge's actions are without jurisdiction or are otherwise voidable on appeal. *Taliaferro*, 186 Ariz. at 222-24 (clarifying language from older cases stating that a judge's removal upon an affidavit is jurisdictional); *see also State v. Ingram*, 239 Ariz. 228, ¶¶9-13 (App. 2016). Instead, where a proper notice is not honored, parties must seek immediate relief by special action "or forever hold their peace." *Taliaferro*, 186 Ariz. at 223-24 & 224. Even when a party timely challenges a judge's decision to hear a case after a peremptory notice, by the time the judge has made a decision on the merits, "it is too late in the day to be worrying about who tried the case, short of true challenges for cause" as provided in the rules. *Id.* at 223; *see also Ingram*, 239 Ariz. 228, ¶ 9.

**¶17** Nor is a judge's obligation upon a timely affidavit for cause analogous here, as the dissent suggests. *See* Ariz. R. Fam. Law P. 6.1(d)(3); *see also* Ariz. R. Civ. P. 42.2(e)(3). Bourke filed no such affidavit. Even if she did, as we have explained, she would have been required to show sufficient grounds under § 12-409. When a party obtains a change of judge based on an oral request, we treat it as a peremptory change of judge as a matter of right. Ariz. R. Fam. Law P. 6(c)(2); Ariz. R. Civ. P. 42.1(b)(2). We cannot agree that a judge's voluntary recusal, in the absence of any request at all, "has the same effect" as either a peremptory notice or an affidavit for cause.

**¶18** No Arizona court has ever bound a judge to a prior voluntary recusal. In *Scheehle v. Justices of the Supreme Court of Arizona*, 211 Ariz. 282, 293-95 & 295 (2005), our supreme court considered "a motion to disqualify" four supreme court justices, at least one of whom had previously decided to recuse voluntarily the last time the same case had come before the court. Our supreme court concluded that the previously recused justice was not

"bound by that decision," instead examining whether the complaining party had demonstrated legal or factual grounds requiring disqualification. *Scheehle*, 211 Ariz. at 293-94, 300-01 & 301; *see also State v. Mincey*, 141 Ariz. 425, 442-43 (1984) (affirming denial of defendant's motion for change of judge for cause where judge had voluntarily recused from sentencing, refused to recuse from motion for new trial, and then withdrew voluntary recusal after reading defendant's motion). Ultimately, we need not decide here whether a voluntary recusal is disqualifying or is otherwise binding on a judge. We conclude only that Bourke waived her challenge by straightforward application of the rules. *See* Ariz. R. Fam. Law P. 6.1(c); *see also* Ariz. R. Civ. P. 42.2(d).

¶19 We do not discount the concerns raised by our dissenting colleague for the perceived impartiality of the judiciary. It is, if nothing else, debatable whether a judge who has previously demonstrated a willingness to recuse is more suspect than a judge who has not recused at all. But we have never before allowed suspicion alone to disqualify a judge, absent an ultimate showing by a preponderance of the evidence that a party would be denied a fair trial by a judge's bias or prejudice. *Costa v. Mackey*, 227 Ariz. 565, ¶ 12 (App. 2011); *see* § 12-409(B)(5); *CSA 13-101 Loop, LLC v. Loop 101, LLC*, 233 Ariz. 355, ¶ 31 (App. 2013) (recusal did not "taint [prior] rulings with the appearance of impropriety"); *Jimenez v. Wal-Mart Stores, Inc.*, 206 Ariz. 424, ¶¶ 16-17 (App. 2003) (subsequent recusal did not raise substantial question about impartiality). In cases where a party suspects bias but does not allege disqualification in an affidavit for cause, in addition to the right to request recusal or bring a special action on the merits, our rules provide abundant protection in the form of a peremptory notice of change of judge as a matter of right. *See* Ariz. R. Fam. Law P. 6; Ariz. R. Civ. P. 42.1. What the rules do not allow is for a party, aware that a judge is precluded from hearing a case and with every opportunity to raise a challenge, to pocket the mulligan, litigate the merits, await the results, and try again with a different judge after raising the issue for the first time on appeal. *Cf. Taliaferro*, 186 Ariz. at 223 (peremptory challenge may not be treated as "a trump card which would later destroy the validity of the entire proceeding").

¶20 Our decision is not an endorsement of the presiding judge's choice to decide the vexatious litigant motion. Even if the presiding judge believed he was not disqualified from hearing the vexatious litigant proceeding, given his recusal from the related dissolution case, the judge surely could have designated a different judge to decide it. *See* § 12-3201(A). At a minimum, he could have made a record explaining his

determination that grounds for disqualification did not exist. *Cf.* Ariz. R. Sup. Ct. 81, R 2.11(C). But ultimately, even assuming his recusal from the dissolution case disqualified him from hearing the vexatious litigant proceeding, Bourke waived the issue by failing to timely raise it.[4] *See John Munic Enters., Inc.*, 235 Ariz. 12, ¶ 4.

## II. Vexatious Conduct

**¶21**    As to the merits of the decision, we review the superior court's order designating Bourke a vexatious litigant for an abuse of discretion. *See Flying Diamond Airpark, LLC v. Meienberg*, 215 Ariz. 44, ¶ 9 (App. 2007) (injunctive relief reviewed for abuse of discretion). "We defer to the court's findings of fact unless clearly erroneous, but we review de novo its legal conclusions." *Id.* Under § 12-3201, vexatious conduct includes: "[r]epeated filing of court actions solely or primarily for the purpose of harassment," "[u]nreasonably expanding or delaying court proceedings," and "[r]epeated filing of documents or requests for relief that have been the subject of previous rulings by the court in the same litigation."

**¶22**    The superior court here found that four of Bourke's pleadings were "frivolous, not necessary, and resulted in unnecessary compl[ex]ity" to the dissolution matter. Although Bourke broadly asserts the finding was "ultimately based on insufficient evidence," she fails to develop any argument that the court's findings concerning the four pleadings at issue were erroneous or unsupported by the record. *See* Ariz. R. Civ. App. P. 13(a)(7)(A) (opening brief must contain argument "concerning each issue presented for review, with supporting reasons for each contention" and "citations of legal authorities" relied upon); *Boswell v. Fintelmann*, 242 Ariz. 52, n.3 (App. 2017) (failure to develop and support argument results in

---

[4]We reject Bourke's contention that the presiding judge's alleged bias "constitutes structural error." In criminal cases, structural error is error that "deprive[s] defendants of 'basic protections' without which 'a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence.'" *State v. Ring*, 204 Ariz. 534, ¶ 45 (2003) (quoting *Neder v. U.S.*, 527 U.S. 1, 8-9 (1999)). Bourke cites no authority applying a structural error analysis to an allegation of judicial bias in a civil case. Nor has she cited any statute or rule permitting a party to raise grounds for disqualification for the first time on appeal. Her argument is contrary to our statutes and rules, under which the sole means to seek a change of judge for cause in a civil action is by filing an affidavit in the superior court alleging one of several statutory grounds for disqualification. § 12-409; Ariz. R. Civ. P. 42.2.

waiver). Instead, Bourke asserts that the court's "innumerable substantive errors" may be shown by comparing "any objective facts . . . to the clearly unsupported findings." She also asserts it is "facially unbelievable" that the court reviewed the voluminous record in the dissolution case before issuing its ruling. Otherwise, the substance of her argument appears to be that the court's failure to conduct an evidentiary hearing "was a *per se* refusal to issue [its ruling] on sufficient evidence." We conclude the record supports the court's findings.

¶23 Bourke's "Motion to Continue December 5, 2022 Hearing" asked the trial court presiding over the dissolution case to reschedule an evidentiary hearing because her "computer crashed" while she was attempting to file her exhibits. In finding the motion vexatious, the superior court reasoned that although "[t]his could have been a short motion," Bourke "included in it several of her complaints" concerning previous decisions in the dissolution case. Indeed, Bourke offered little to explain how the computer crash would interfere with her preparation for the hearing, except to state that she "keeps her documents on her computer's hard drive." Instead, she devoted much of the motion to grievances concerning prior court decisions. Bourke devoted the opening paragraph of the motion to complaining that the court had previously granted continuances to Contreras for reasons that Bourke apparently found inadequate. She also suggested that the court's attorney fee awards had resulted in her "living off of credit cards" and asserted that she could not "seek assistance with exhibits and filed case documents because the parties are gagged."

¶24 Bourke's "Motion to Terminate Appointment of [the Best Interests Attorney]" similarly contained numerous complaints concerning previous decisions in the dissolution case. The dissolution court had denied Bourke's earlier requests to terminate the minor child's best interests attorney (BIA) on largely the same grounds. Bourke stated that "[f]or nearly four years now, this Court has encouraged the BIA's bias and lies to the detriment of a small child." She asserted the court in the dissolution case had "encouraged" the BIA "to deceive in order to please" Contreras, whom Bourke described as an "abusive litigator." She further accused that court of "abusive behaviors" and criticized its denial of earlier requests for relief, including her previous motion to terminate the BIA. Bourke generally suggested that the court had not been even-handed in its treatment of the parties in the dissolution case, stating that it had "encourage[d] the BIA's blind adherence to [Contreras]'s domestic violence agenda."

¶25      Bourke's "Motion for [the Dissolution Case] to Proceed Publicly" likewise requested relief that had been subject to previous rulings in the dissolution case. The dissolution court had sealed the case file and closed hearings to the public, and it affirmed both decisions on subsequent occasions. Again, Bourke utilized this motion as a means to express her disagreement with various prior decisions. She accused one judge of attempting to "exact revenge" against her, accused another judge of "abuses," argued that previous rulings had "driven [her] to poverty," and claimed that the court "defers to [Contreras]'s every whim." She identified the denial of her "Motion to Continue December 5, 2022 Hearing," discussed above, as an example of her unfair treatment, repeating her complaint from that motion concerning the prior decision to grant a continuance at Contreras's request.

¶26      Finally, in her "Motion for Equal Treatment/Equal Limitation of Parties' Gag Order Hearings," Bourke sought an order that the court in the dissolution case would not hear Contreras's allegation that Bourke was in contempt for violating "gag orders." Like her other motions, this one went far beyond the specific request for relief or any arguments relevant to it. Apart from the request for relief, the motion consists entirely of Bourke's complaints concerning the substance and procedure of various prior orders, followed by straightforward allegations of judicial bias. After reciting a list of complaints dating back more than a year, Bourke urged, "This Court should not continue using the gag orders herein to hide its terribly prejudicial behavior toward [Bourke] and the minor child." She accused the dissolution court of "twist[ing] facts, the law, and all reason to find ways in which [Bourke] has not faithfully complied with" orders while allowing Contreras "to break [them] with impunity." She insisted that "[t]he temporar[]y seal of this case should not be used as a weapon by this Court." The motion is devoid of either legal argument or citation to legal authority. In its order finding the motion vexatious, the superior court concluded that the motion "particularly illustrate[d] [Bourke]'s vexatious conduct" because "[t]he requests made in [this] motion[] were previously denied." The court noted that Bourke had "repeatedly attempted to have the proceedings opened to the public," apparently taking the motion as another of Bourke's pleadings that challenged the order to close the dissolution case to the public. Indeed, much of the motion reads as a series of complaints challenging prior decisions related to that order and its enforcement.

¶27      The superior court did not abuse its discretion by concluding that these four motions amounted to vexatious conduct. At a minimum, and consistent with the court's findings, the motions challenged matters

that had been the subject of previous rulings in the dissolution case. *See* § 12-3201(E)(1)(f). Moreover, as the court also found, Bourke's motions unreasonably expanded the proceedings with pleadings that largely served as vehicles to air accusations against the court and Contreras. *See* § 12-3201(E)(1)(b).

## III. Due Process

¶28 Bourke also argues the superior court violated her right to due process by failing to conduct an evidentiary hearing. Pre-filing restrictions "must be entered sparingly and appropriately" and with respect for due process. *Madison*, 230 Ariz. 8, ¶¶ 17-18 & 17. "[T]o ensure that a litigant's access to courts is not inappropriately infringed upon," a pre-filing restriction against a litigant requires: (1) "notice and an opportunity to oppose the order"; (2) an adequate record of relevant cases and filings; (3) "substantive findings as to the frivolous or harassing nature of the litigant's actions"; and (4) an order that is "narrowly tailored to closely fit the specific vice encountered." *Id.* ¶ 18 (quoting *De Long v. Hennessey*, 912 F.2d 1144, 1148 (9th Cir. 1990)). These requirements are grounded in the fundamental right to access courts, *see id.* ¶¶ 17-18, and it necessarily follows that they apply to pre-filing restrictions entered under either § 12-3201 or the court's inherent authority.

¶29 Here, the superior court permitted adequate time for Bourke to file a response in opposition to the motion to designate her a vexatious litigant, made a record of each pleading at issue, made substantive findings concerning the conduct it found vexatious, and limited the pre-filing restrictions to a single case. *See Madison*, 230 Ariz. 8, ¶ 18. Notably, Bourke did not request an evidentiary hearing. She requested only the "opportunity to oppose the order . . . through motion practice, during a hearing, or both." The court permitted Bourke that opportunity. Bourke has not meaningfully explained how she was prejudiced by the lack of an evidentiary hearing, given that the vexatious litigant designation depended entirely on her own pleadings in the court file. *See, e.g., Volk v. Brame*, 235 Ariz. 462, ¶ 26 (App. 2014) ("Due process errors require reversal only if a party is thereby prejudiced.").

## IV. Attorney Fees and Costs

¶30 Contreras requests his attorney fees and costs on appeal under A.R.S. § 25-324(A), (B), and Rule 21, Ariz. R. Civ. App. P. We deny his request for fees. As the prevailing party on appeal, Contreras is entitled to recover his costs upon compliance with Rule 21. *See* A.R.S. § 12-341.

**Disposition**

¶31     We affirm the order designating Bourke a vexatious litigant.

S K L A R, Judge, dissenting:

¶32     Nancy Bourke was declared a vexatious litigant by a presiding judge who had recused from the same case in which he entered the vexatious-litigant order. The majority rightly questions whether that judge should have entered that order. But it nevertheless concludes that Bourke waived the issue on appeal. I disagree with this conclusion.

¶33     More fundamentally, I disagree with the majority about the nature of this case. For the majority, the central issue is whether Bourke properly invoked the procedure for challenging a judge for cause and whether her asserted failure to do so results in waiver. But because this case involves a judge who had already recused in the same case, I believe we must instead focus on the effect of that recusal. I also do not believe we should apply the discretionary doctrine of waiver in this context. Nor do I believe that a for-cause challenge was required. Rather, our case law provides that the recusal rendered the vexatious-litigant order voidable. I conclude that by raising the issue on appeal, Bourke has rendered it void. I therefore respectfully dissent.

## I.  Applicable Facts

¶34     The facts are undisputed. In early 2020, the case was reassigned to the presiding judge due to conflicts with other judges. That same day, without taking any other action, the presiding judge recused himself. His recusal order did not specify a reason. By that point, all the superior court judges in Cochise County had recused themselves, so the court reassigned the case to a Pima County judge. The order doing so, which came from the court administrator and was unsigned, stated that "a conflict exist[ed]" because all the Cochise County judges had recused themselves.

¶35     Nearly three years later, in December 2022, Contreras renewed an earlier motion—which had apparently been overlooked—seeking an order that Bourke was a vexatious litigant. That motion was referred to the presiding judge, consistent with A.R.S. § 12-3201. After issuing an initial order governing procedures for that motion, the presiding judge granted it. Nowhere in either of those orders did the presiding judge reference his prior recusal.

**¶36** Bourke's response to the motion did reference it. In the context of arguing that Contreras's motion amounted to judge-shopping, she wrote that Contreras "wishes for the Presiding Judge, who has already recused himself due to conflicts of interest, to address the merits of [a different motion], instead of the assigned judicial officer." She did not, however, explicitly ask that the presiding judge re-recuse himself. Nor did she seek a change of judge, either for cause or peremptorily.

## II. Applicability of Waiver

**¶37** The majority relies heavily on the doctrine of waiver. I therefore first address why I would not apply waiver under these facts.

### A. Scope and basis of recusal obligation

**¶38** Addressing waiver requires placing the judicial recusal obligation in the proper ethical context. The source of that obligation is Rule 2.11(A) of the Code of Judicial Conduct, which is found at Rule 81 of the Rules of the Supreme Court. Rule 2.11(A) provides, "A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned." The rule also includes a non-exclusive list of such circumstances. This obligation secures a party's foundational right to a trial presided over by an impartial judge as well as the broader societal interest in ensuring that the judiciary is free of bias. *See Kay S. v. Mark S.*, 213 Ariz. 373, ¶ 36 (App. 2006) (requiring courts to consider "risk of undermining public confidence in the judicial process" in determining whether judgment should be vacated for failure to disqualify judge).

**¶39** Of particular interest, especially in light of the majority's conclusion concerning waiver, is a comment to Rule 2.11. It emphasizes, "A judge's obligation not to hear or decide matters in which disqualification is required applies regardless of whether a motion to disqualify is filed." Code of Judicial Conduct, Rule 2.11, cmt. 2.

### B. Relationship between recusal obligation and waiver determination

**¶40** Despite the comment's "regardless" language, the majority concludes that Bourke waived her challenge because she did not seek a change of judge for cause under Rule 6.1 of the Arizona Rules of Family Law Procedure. The majority is correct that this rule requires a party to file an affidavit in support of its request "within 20 days after discovering that

grounds exist for a change of judge." Ariz. R. Fam. Law P. 6.1(c). And it does cite a case finding that a party waived the right to challenge a judge's purported bias by delaying in raising a challenge. *John Munic Enters., Inc. v. Laos*, 235 Ariz. 12, ¶ 4 (App. 2014).

**¶41** But neither the rule nor the case law require us to find waiver in this context. Rather, our decision to apply waiver is discretionary. *Noriega v. Town of Miami*, 243 Ariz. 320, ¶ 27 (App. 2017). We have declined to do so in numerous circumstances, including where "consideration of an issue better serves the public." *Ariz. All. For Retired Am., Inc. v. Crosby*, 256 Ariz. 297, ¶ 10 (consideration serves the public). We have also done so where a case raises a novel or pure issue of law. *See, e.g.*, *State v. Santillanes*, 254 Ariz. 301, ¶ 28 (App. 2022) (vacated on other grounds by *State v. Santillanes*, 256 Ariz. 480, ¶ 39 (2024) (novel issue)); *Logan B. v. Dep't of Child Safety*, 244 Ariz. 532, ¶¶ 9-11 (App. 2018) (legal issue).

**¶42** Perhaps most importantly, we have also declined to apply waiver in a context similar to this one, precisely because the issue implicated the judicial-ethics rules. In that case, *State v. Emanuel*, 159 Ariz. 464, 468 (App. 1989), the judge had conducted independent research to assist in a sentencing determination. Doing so was inconsistent with the obligation contained in the applicable ethics code to "disqualify himself in a proceeding in which his impartiality might reasonably be questioned." *Id.* at 467-68 (citing ABA Code of Judicial Conduct, Canon 3(c) (as amended August 1977)). In declining to apply waiver, this court distinguished other cases in which waiver had been applied, in part because they did not involve violations of the judge's obligation. *Id.* at 468. This court then remanded for a resentencing by a different judge. *Id.* at 469.

**¶43** I agree with the majority that *Emanuel* can be factually distinguished. But its core conclusion—that we should not necessarily apply waiver in cases involving judicial-ethics issues—has equal force here. Whether a recused judge may reenter a case, even in the context of a vexatious-litigant proceeding, is an important question that concerns the impartiality and perceived impartiality of the judiciary. Nor, despite the majority's implication to the contrary, does the question require development of a factual record. This court is equally capable as the trial court of addressing the pure legal question about the effect of a prior recusal. Moreover, applying waiver is inconsistent with the comment to Rule 2.11, which imposes the recusal obligation regardless of a motion to disqualify.

### C. Whether affidavit for change of judge is proper mechanism for challenging reentry of recused judge

¶44 Even if applying waiver might be appropriate in some circumstances when a recused judge reenters a case, I am not convinced that a party can waive the issue simply by not filing a Rule 6.1 affidavit. A party may file such an affidavit only for the reasons specified in A.R.S. § 12-409(B). A prior recusal could arguably fit under some of the reasons. *See, e.g.*, § 12-409(B)(2) ("judge is otherwise interested in the action"), (B)(5) ("party filing the affidavit has cause to believe and does believe that on account of the bias, prejudice, or interest of the judge he cannot obtain a fair and impartial trial"). But Section 12-409 does not purport to be a complete list of circumstances in which judges are disqualified. *Zuniga v. Superior Court*, 77 Ariz. 222, 224 (1954) (providing that recusal does not necessarily equate to existence of grounds for disqualification). Rule 2.11 contains a broader but still non-exclusive list. *See* Code of Judicial Conduct, Rule 2.11(A) ("A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned."). In my view, a judge having previously recused in the same case fits within Rule 2.11, even if it falls outside Section 12-409. Otherwise, recusals could be revocable. But in the majority's view, litigants faced with such a circumstance would have no remedy.

¶45 This case illustrates the problem. As the majority notes, the presiding judge was not required to give a reason for his initial recusal, and he did not do so. The only clue is the court administrator's order that references a "conflict." But even that order is of limited value. It does not describe the conflict's nature, and it does not clarify whether the court administrator conferred with the presiding judge before using the word "conflict."

¶46 On this record, Bourke had no concrete basis to argue that the presiding judge's prior recusal rendered him biased or otherwise subject to disqualification under Section 12-409. The record does not reveal anything to support such an argument. And once the presiding judge recused, Bourke had no need to develop or preserve such a record. She could reasonably rely on the recusal itself as a basis for concluding that the judge would not reenter the case.

¶47 Moreover, what if Bourke had filed such a request, then not prevailed? The majority contemplates this possibility, even stating, "It is not obvious a prior recusal, even in the same case, is enough to demonstrate" the necessary bias. Based on that reasoning, the majority

apparently believes that, at least in some cases, a recused judge may revoke the recusal and reenter a case. As I explain in the next section, I disagree. But at a minimum, I would not penalize Bourke with waiver simply because she failed to perceive such a counterintuitive possibility. Our case law on waiver is sufficiently flexible to relieve her of this penalty.

## III. Remedy for Order Improperly Entered by Recused Judge

**¶48** Regardless of a waiver, Bourke is not entitled to relief unless she has a substantive basis for it. Because I do not believe Section 12-409 is applicable, I disagree with the majority that we must analyze that question based on that statute. I would look instead to the rules and case law governing judicial recusal.

### A. Rules of procedure and case law concerning effect of recusal

**¶49** The rules of procedure do not address the effect of a judge's reentry into a case after recusal. The closest analogs are Rules 6(g) and 6.1(d) of the Arizona Rules of Family Law Procedure. Rule 6(g)(1) sets forth a judge's responsibilities after a party has filed a proper notice of change of judge as a matter of right. It requires the judge to "proceed no further in the action" except to make immediately necessary orders. Rule 6.1(d)(3) imposes a similar requirement on judges who are the subject of a successful affidavit seeking to change judge for cause. *See also* Ariz. R. Civ. P. 42.1(f), 42.2(e)(3) (similar requirements in civil cases); Ariz. R. Crim. P. 10.1(b)(2), 10.2(b)(3) (similar requirements in criminal cases). These requirements suggest that when the presiding judge recused himself—an action that has the same effect as disqualification under the rules—his power to act did not extend to entering the vexatious-litigant order.

**¶50** Relying on the same language in the criminal version of this rule, this court concluded in *Nordstrom v. Leonardo*, 214 Ariz. 545 (App. 2007), that a presiding judge who had been peremptorily removed from a case lacked authority to consider a later for-cause challenge to a different judge. We concluded that once the presiding judge had been peremptorily removed, his obligation to "proceed no further" rendered him without legal authority to decide the for-cause challenge. *Id.* ¶¶ 11-16. This was true even though his ruling on the for-cause challenge was in his capacity as presiding judge, as expressly contemplated by the applicable rule. *Id.* ¶ 14 (citing Ariz. R. Crim. P. 10.1(c)).

¶51     A much older case from our supreme court reaches a similar conclusion. That case, *Conkling v. Crosby*, 29 Ariz. 60 (1925), addresses the consequences of a judge "actually laboring under a disqualification." *Id.* at 68-69. It explains that "no affidavit is necessary to the consummation of a disqualification which already exists," so "the failure to file the affidavit in any manner [cannot] cure an existing disqualification or clothe the judge with authority to preside notwithstanding." *Id.* at 69. Rather, the actions of that judge are "voidable." *Id.* at 68. Thus, as long as the disqualified judge's actions are challenged "in due season," they are subject to being set aside. *Id.*

## B.     Voidability of orders entered by recused judge

¶52     Taken together, these cases stand for the proposition that once a judge has been removed or recused from a case, that judge's subsequent rulings are voidable upon timely challenge. *See also Hordyk v. Farley*, 94 Ariz. 189, 195 (1963) (holding that where trial court proceeded after party filed "affidavit of bias," issue "is jurisdictional in nature" such that writ of prohibition may issue). I agree with the majority that they are not automatically void even in the absence of a challenge.

¶53     But in my view, raising the challenge on appeal is sufficiently timely under the circumstances of this case, especially because Bourke alerted the presiding judge to his prior recusal. This is consistent with *Conkling*, in which the challenge was raised after trial, though as the majority notes, before judgment was entered. *Conkling*, 29 Ariz. at 63. I therefore believe our case law compels us to vacate the presiding judge's vexatious-litigant order and remand so a different judge may consider it.

¶54     Numerous other jurisdictions share this view. Some even go further, providing an absolute rule that orders entered by recused judges are void. *See, e.g.*, *Marts v. Khan*, 344 So. 3d 224, 225 (La. Ct. App. 2022) (holding that judgment entered after trial court recusal was "an absolute nullity"); *Olson v. Eco Marine Contractor, LLC*, 319 So. 3d 788, 790 (Fla. Dist. Ct. App. 2021) ("An order entered by a judge after recusal is void," except where it is merely ministerial act); *Stringer v. United States*, 233 F.2d 947, 948 (9th Cir. 1956) ("In our judgment, once having disqualified himself for cause, on his own motion, it was incurable error for the district judge to resume full control and try the case.").

### C.    Addressing the majority's remaining points

¶55          The majority raises two other issues that are worthy of comment.  First, it relies on the view that the vexatious-litigant issue is distinct from—though related to—the underlying family-law action, such that the family-law recusal would not apply.  I agree that in many cases, vexatious-litigant motions arise out of a litigant's conduct over multiple proceedings.  I offer no comment on the effect of a prior recusal to that type of motion.

¶56          But this was not such a motion.  It solely concerned Bourke's conduct in this case.  And the resulting order limited her ability to file documents in this case alone.  Under these circumstances, I cannot agree that the vexatious-litigant motion was anything other than a continuation of the underlying proceeding.  *See also Rath v. Rath*, 974 N.W.2d 652, ¶ 31 (N.D. 2022) (concluding that judge who had been disqualified could not consider vexatious-litigant motion).

¶57          Second, the majority seeks support for its position in *Scheele v. Justs. of the Sup. Ct. of Ariz.*, 211 Ariz. 282 (2005).  In that case, a certified question from a federal case that named all five justices as defendants who had all recused themselves.  *Id.* at 294.  Years later, the supreme court received a new certified question in the same case.  *Id.*  Only two of the defendant-justices remained on the court, and one did not recuse.  *Id.* at 294-95, 300-01.  The court concluded that her recusal was not required in answering the new certified question.  *Id.* at 301.

¶58          *Scheele*, however, presented two unique circumstances not relevant here.  First, the two certified questions were distinct proceedings before the supreme court, though part of a single federal-court proceeding. *See id.*; *see also Scheele v. Justs. of Sup. Ct. of Ariz.*, 203 Ariz. 520 (2002).  This case, by contrast, involved a single proceeding.

¶59          Second, and more importantly, *Scheele* implicated the rule of necessity, which allows a judge to hear a matter despite grounds for disqualification where no other judge could hear it.  *Scheele*, 211 Ariz. at 296-97; *see also* Code of Judicial Conduct, Rule 2.11, cmt. 3 (incorporating rule of necessity).  That rule is not applicable here, where Section 12-3201(A) allows the presiding judge to designate a different judge to decide the vexatious-litigant motion.

\* \* \*

**¶60**　　　　　Ultimately, I cannot agree with the majority that voluntary recusal is of less permanence or consequence than a disqualification for cause.  Litigants and the public should be confident that when a judge recuses from a case, the judge will not later reenter that same case.  Any other outcome risks the appearance of bias.  That risk is a sufficient reason not to apply the discretionary doctrine of waiver—a doctrine that the majority needlessly elevates over the important public interest at issue.  I would therefore remand so a different judge, designated by the presiding judge under Section 12-3201(A), can reconsider the vexatious-litigant motion.  *See Hordyk*, 94 Ariz. at 195 (allowing disqualified judge to enter order transferring case to different judge).  I respectfully dissent.